From Wake.
STATE OF NORTH CAROLINA, } Superior Court of Law, WAKE COUNTY. } October Term, 1809.
The jurors for the State upon their oaths present, that John Owen, late of the county and State aforesaid, cabinet-maker, not having the fear of God before his eyes, but being moved and seduced by the instigations of the devil, on the night of 21 April, 1809, with force and arms, at the city of Raleigh, in the county of Wake aforesaid, in and upon one Patrick Conway, in the peace of God and the State then and there being, feloniously, willfully, and of his malice aforethought did made an assault; and that he, the said John Owen, with a certain stick, of no value, which he, the said John Owen, in both his hands then and there had and held, the said Patrick Conway, in and (453) upon the head and face of him, the said Patrick Conway, then and there feloniously, willfully, and of his malice aforethought, did strike and beat, giving to the said Patrick Conway, then and there, with the pine stick aforesaid, in and upon the head and face of him, the said Patrick Conway, severalmortal wounds, of which said several mortal wounds the said Patrick Conway then and there instantly died; and so the jurors aforesaid, upon their oath aforesaid, do say that the said John Owen the said Patrick Conway, in manner and form aforesaid, feloniously, willfully, and of his malice aforethought, did kill and murder, against the peace and dignity of the State.
OLIVER FITTS, Attorney-General.
The judges were unanimous in opinion that the first (457) exception taken to the indictment could not be supported.
In endeavoring to form a correct opinion on the points argued in this case, it is the design not less than the duty of the Court to conform to the principles of law as they are laid down in works of authority. We disclaim all right of giving to them a rigorous construction to aid the prisoner's acquittal or of relaxing their true meaning to effect his condemnation. Like every other citizen in his situation, he is entitled to the full benefit of the constitutional provisions devised to promote the security of all; and though the most atrocious criminality may have been proved to the satisfaction of the jury, yet legal (458) condemnation ought never to be separated from legal proofs. And we cannot too strongly impress it on our minds that want of the requisite precision and certainty which may, at one time, postpone or ward off the punishment of guilt, may, at another, present itself as the last hope and only asylum of persecuted innocence. It must, however, be confessed that there is, in the ancient reasoning on this branch of the law, a degree of metaphysical and frivolous subtilty strongly characteristic of the age in which it was introduced, when at the revival of letters the first efforts of learning were laborious and rude, and scarcely a ray of common sense penetrated the clouds of pedantry. Were a system now to be established, it is probable that much of the jargon of the law would be exploded, and that no objection would prevail against an indictment, or any other instrument, which conveyed to the mind, in an intelligible form, its intended impression. But we must follow in the footsteps of those who have preceded us until the Legislature think fit to interfere; though we have no wish to extend the particularity further. On this subject the sentiments of an eminent judge have been properly read by the counsel for the State; since, although he was conspicuous for his tenderness to criminals, as well as for every manly and Christian virtue, yet he condemned this nicety as a reproach to the laws. We would also refer to the opinion of another illustrious man delivered a century afterwards, a man who had devoted a long life to the cultivation of the science he so ably dispensed.
The first exception taken to this indictment is that in that part of it which states the mortal wound the stroke is only laid by implication.
The rule laid down by the writers is that where the death is occasioned by a wound, bruise or other assault, the stroke should *Page 310 
be expressly laid. In every case, however, where the objection has been heretofore taken, there is an omission of the express charge of the stroke in that part of the indictment wherein it is charged in this. In Long's case, 5 Co., the word (459) "discharged" is used. There seems to be no case where a repetition of the stroke is required after the participlegiving, if it has been directly charged in the preceding clause.
A critical examination of Long's case, supposing it to be of good authority, which is by no means certain, will show that instead of supporting, its tendency is to repel the exception in this case. The material words of the indictment, necessary to be taken into view, in Long's case, were "that the aforesaid H. D. a certain pistol, etc., loaded with powder and a leaden bullet, etc., in and upon the said H. Long discharged, giving to the said H. Long then and there with the leaden bullet aforesaid, so as aforesaid sent forth from the said pistol by the said H. D., one mortal wound, etc." The court in giving judgment, divided the objection into two parts: (1) the clause before the words "giving him"; (2) the clause containing these words; and they resolved that the first clause was not sufficient of itself; for although H. D. discharged the pistol upon him, it may be that he was not struck by it. Then the second clause cannot make it good, for the clause of "giving," etc., depends on the said first clause, and describes the wound only to show it to be mortal, which ought to appear by the first sentence to be given; because in that case the principle determines the verb. But here it did not appear by the first clause that a stroke was given, and then "giving," etc., cannot supply it, for that is a participle depending upon the verb precedent, and the verb precedent is "discharged," and "discharged" may be without a stroke. Although the grammar and logic of that case are refined, yet the Court do not in their reasoning intimate the necessity of inserting after the participle "giving," the manner, the quo modo of the wound. Their opinion is that if there had been a direct allegation of a stroke in the first clause, the (460) participle "giving" would have connected it with the second clause and made the indictment good. But the decision was not approved of in after times; for Lord Holt
said that by his consent they would not be so nice again, and that there was not a case in the law like that; and its authority is admitted to be considerably shaken in a recent case.
To sustain this exception would be to establish a precedent more exceptionable than that in Long's case; and instead of promoting perspicuity and simplicity of language in indictments, would seem only to introduce tedious and perplexing *Page 311 
tautology. Yet this is not required, even in the statement of those terms of art so peculiarly appropriated to the description of particular offenses that they cannot be supplied by any circumlocution. For where the indictment charged that A feloniously and of his malice aforethought assaulted B, and with a sword, etc., then and there struck him, etc., the first allegation of feloniously and of his malice aforethought applied to the assault, ran also to the stroke to which it is essential. An indictment against Mary Nicholson for poisoning Elizabeth Atkinson stated that the prisoner did willfully, feloniously and of her malice aforethought. mix poison, viz., white arsenic with flour and milk, with the intent that the same should be afterwards taken and eaten by the deceased, and the said flour and milk so mixed with the poison as aforesaid, then and theredelivered to the deceased, etc. This was holden sufficient by all the judges, without adding the words "feloniously and of her malice aforethought" to the allegation of delivering the poison. For they considered that these words ran by the word "and" and the words "then andthere." But if the sentence had not been so connected, a different construction would have prevailed.
The indictment before us contains a direct allegation of a stroke, accompanied with the necessary terms of art, and all the sentences are connected together by the words and and thenand there; so that in all these respects it bears the strict form of carrying forward from one sentence to another (461) the criminal charge. Further repetition might have obscured, but could not have illustrated the charge, nor could it have brought the indictment nearer to the most approved precedents. On this point, therefore, the Court are unanimously of opinion against the prisoner.
As to the second exception, the judges were divided in opinion: Hall,Lowrie and Henderson being of opinion that the exception was fatal to the indictment, and that sentence of death could not be pronounced against the prisoner upon the indictment in consequence thereof; Taylor and Locke being of a contrary opinion.