STATE OF NORTH CAROLINA v. HENRY LEE HUNT

No. 5A86-8

(Filed 16 July 2003)

**Homicide— first-degree murder—short-form indictment—failure to list aggravating circumstances—constitutionality**

The trial court did not err by denying a petitioner's writ of habeas corpus petition even though petitioner contends the short-form murder indictments used to charge him with two counts of capital first-degree murder and two counts of conspiracy to commit murder were rendered unconstitutional by the United States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 153 L. Ed. 2d 556 (2002), based on the fact that the aggravating circumstances relied upon by the State at trial were not alleged in petitioner's indictments, because: (1) N.C.G.S. § 15A-2000(c)(1) provides that aggravating circumstances must be submitted to and found by the jury beyond a reasonable doubt; (2) the *Ring* case does not require that aggravating circumstances be alleged in state-court indictments; (3) constructive statutory notice under N.C.G.S. § 15A-2000(e) in which the eleven aggravating circumstances are listed for first-degree murder is adequate to satisfy the constraints of due process as dictated by the United States Constitution's Sixth Amendment and the North Carolina Constitution; and (4) if aggravating circumstances are the functional equivalent of elements for the purposes of complying with the Sixth Amendment notice requirement, this Court has already indicated that aggravators, being akin to other elements of murder such as premeditation and deliberation, do not necessarily have to be listed in the short-form murder indictment for a defendant to receive sufficient notice.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order entered 21 January 2003 by Judge Jack A. Thompson in Superior Court, Robeson County, denying defendant's petition for writ of habeas corpus. Heard in the Supreme Court 8 April 2003.

*Roy Cooper, Attorney General, by G. Patrick Murphy, Barry S. McNeill, and William P. Hart, Special Deputy Attorneys General, for the State.*

STATE v. HUNT

[357 N.C. 257 (2003)]

*D. Stuart Meiklejohn, pro hac vice, and Steven L. Holley, pro hac vice, for defendant-appellant.*

*Hunter, Higgins, Miles, Elan & Benjamin, by Robert Neal Hunter, Jr.; and Gaskins & Gaskins, by Herman E. Gaskins, Jr., on behalf of the North Carolina Academy of Trial Lawyers, amicus curiae.*

*Louis D. Bilionis on behalf of North Carolina Law Professors Anthony V. Baker; Sara Sun Beale; Louis D. Bilionis; John Charles Boger; Kenneth S. Broun; James E. Coleman, Jr.; Michael Kent Curtis; Marshall L. Dayan; Irving Joyner; Robert P. Mosteller; Eric L. Muller; Gene R. Nichol; J. Wilson Parker; H. Jefferson Powell; Richard A. Rosen; Fred J. Williams; and Ronald F. Wright, Jr., amici curiae.*

*North Carolina Conference of District Attorneys, by William D. Kenerly, amicus curiae.*

BRADY, Justice.

Henry Lee Hunt (petitioner), convicted of two capital murders over seventeen years ago, challenges the lawfulness of the charging instruments used to indict him for first-degree murder. These instruments, known as "short-form indictments," have been used to charge murder suspects under North Carolina law for over a hundred years. This appeal therefore raises a question of critical importance to the legal validity of virtually every murder conviction secured in this state over the past century.

The dispositive issue in the present case is whether the United States Supreme Court's recent decision in *Ring v. Arizona*, 536 U.S. 584, 153 L. Ed. 2d 556 (2002), renders North Carolina's short-form murder indictment unconstitutional. We conclude that it does not and therefore affirm the decision of the trial court.

Petitioner is currently incarcerated on North Carolina's death row. On 28 May 1985, petitioner was indicted in Superior Court, Robeson County, on two counts of first-degree murder and two counts of conspiracy to commit murder in connection with the killings of Jackie Ray Ransom and Larry Jones. Petitioner was indicted pursuant to short-form murder indictments authorized by N.C.G.S. § 15-144.

Petitioner was tried and convicted on all counts at the 18 November 1985 session of Superior Court, Robeson County. The facts

underlying petitioner's conviction were presented fully in our opinion reviewing petitioner's case on direct appeal. *See State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988). Briefly, those facts indicate that petitioner's codefendant, Elwell Barnes, recruited petitioner to assist in the killing of Jack Ransom. Barnes had agreed to kill Ransom for $2,000 so that Ransom's wife could obtain the proceeds of a life insurance policy. On 8 September 1984, petitioner killed Ransom. Believing that another individual, Larry Jones, had discussed Ransom's murder with police, petitioner shot and killed Jones on 14 September 1984.

Pursuant to our statutory capital sentencing procedures, the State introduced evidence to the jury supporting two aggravating circumstances for each of petitioner's first-degree murder convictions. As for the murder of Ransom, the State presented evidence as to the following aggravating circumstances: (1) a prior conviction for a felony involving the use or threat of violence to another person, N.C.G.S. § 15A-2000(e)(3) (1983) (amended 1994); and (2) capital felony committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6). For the murder of Jones, the State introduced evidence supporting the following aggravating circumstances: (1) a prior conviction for a felony involving the use or threat of violence to another person, N.C.G.S. § 15A-2000(e)(3); and (2) murder committed for the purpose of avoiding or preventing a lawful arrest, N.C.G.S. § 15A-2000(e)(4). The jury found that the State had established each of the submitted aggravators beyond a reasonable doubt and recommended a sentence of death for each of the murders. The trial court entered judgments accordingly.

Petitioner sought and received extensive direct and collateral review of his convictions and sentences. On direct appeal, this Court found no error in petitioner's convictions and sentences. *Hunt*, 323 N.C. 407, 373 S.E.2d 400. The United States Supreme Court vacated the sentences of death and remanded the case to this Court with instructions to review the penalty phase of petitioner's trial in light of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *Hunt v. North Carolina*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). On remand, this Court found any error in the penalty proceeding harmless beyond a reasonable doubt and again found no reversible error in petitioner's convictions and sentences. *State v. Hunt*, 330 N.C. 501, 411 S.E.2d 806 (1992). The United States Supreme Court subsequently denied petitioner's writ of certiorari to review our decision. *Hunt v. North Carolina*, 505 U.S. 1226, 120 L. Ed. 2d 913 (1992).

**STATE v. HUNT**

[357 N.C. 257 (2003)]

Petitioner filed his first post-conviction motion for appropriate relief (MAR) pursuant to N.C.G.S. § 15A-1415 in Superior Court, Robeson County, on 3 December 1992. On 2 June 1994, several of petitioner's claims were dismissed as procedurally barred. This Court affirmed that dismissal. *State v. Hunt,* 336 N.C. 783, 447 S.E.2d 436 (1994). Beginning on 12 September 1994, the Superior Court conducted a five-week evidentiary hearing in connection with the remaining MAR claims. On 16 September 1996, the court denied petitioner's MAR. Both this Court and the United States Supreme Court denied writs of certiorari. *State v. Hunt,* 345 N.C. 758, 485 S.E.2d 304, *cert. denied,* 522 U.S. 861, 139 L. Ed. 2d 107 (1997).

On 10 April 1998, petitioner initiated federal habeas corpus proceedings under 28 U.S.C. § 2254. The United States District Court for the Eastern District of North Carolina granted the State's motion for summary judgment and denied petitioner's section 2254 petition. Petitioner appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed the district court's order on 23 May 2002. *Hunt v. Lee,* 291 F.3d 284 (4th Cir. 2002). The United States Supreme Court denied certiorari review on 2 December 2002. *Hunt v. Lee,* —— U.S. ——, 154 L. Ed. 2d 517 (2002). Upon exhaustion of federal habeas corpus review, petitioner's execution was scheduled to occur between 12:01 a.m. and 12:00 p.m. on 24 January 2003.

On 23 December 2002, petitioner filed a petition for writ of habeas corpus in Superior Court, Orange County, pursuant to chapter 17 of the North Carolina General Statutes. Petitioner alleged that the Superior Court, Robeson County, did not have jurisdiction to try his case, as the indictments under which the court proceeded were defective. Specifically, petitioner contended that his indictments failed to allege: (1) the specific elements of intent, premeditation, and deliberation; and (2) the aggravating circumstances presented by the State in support of its contention that petitioner should receive the death penalty.

In an order entered 14 January 2002, the Orange County trial court denied in part and granted in part the petition for writ of habeas corpus. The trial court first denied petitioner's argument that the indictment failed to allege intent, premeditation, and deliberation. The trial court concluded that the argument was meritless based upon well-established case law from both this Court and the United States Supreme Court. However, the trial court granted a writ of habeas corpus as to petitioner's second argument based upon the United States Supreme Court's recent decision in *Ring,* 536 U.S. 584,

153 L. Ed. 2d 556. The trial court concluded that the court in which petitioner was convicted and sentenced did not have jurisdiction because, pursuant to *Ring*, the aggravating circumstances relied upon by the State at sentencing should have been alleged in petitioner's indictments. Pursuant to Rule 25(4) of the General Rules of Practice for the Superior and District Courts, the trial court concluded that the United States Supreme Court's decision in *Ring* rendered petitioner's second claim a "meritorious" challenge to the Superior Court's jurisdiction.

The trial court went on to conclude that if the petition "is deemed not to present a jurisdictional challenge, . . . it presents a meritorious non-jurisdictional challenge" and should be transferred to Robeson County "for disposition as a [MAR]." The State petitioned this Court for a writ of certiorari to review the trial court's order, but this Court denied the State's petition on 16 January 2003. *State v. Hunt*, 356 N.C. 686, 576 S.E.2d 333 (2003).

On 14 January 2003, petitioner filed a second MAR, along with a stay of execution, in Superior Court, Robeson County, alleging that he was factually innocent based upon evidence unavailable at the time of his trial. The trial court denied the second MAR and stay on 22 January 2003.

On 17 January 2003, Superior Court Judge Jack A. Thompson, who was assigned to Robeson County, held a hearing to consider the writ of habeas corpus returned to Superior Court, Robeson County, pursuant to Rule 25(4). Judge Thompson conducted a *de novo* review and thereafter entered an order on 21 January 2003 denying the petition. According to Judge Thompson, this Court had consistently rejected the very same arguments raised by petitioner: that the indictments should have contained the aggravating circumstances that the State intended to introduce at trial. Judge Thompson found that nothing in *Ring* required a different result or reconsideration of the issue raised. As such, Judge Thompson concluded that Superior Court, Robeson County, had subject matter jurisdiction over the crimes for which petitioner was indicted and denied the petition, as it lacked merit and presented no probable grounds for review. *See* N.C.G.S. § 17-4(4) (2001).

Thereafter, petitioner filed a petition for writ of habeas corpus with this Court to review Judge Thompson's 21 January 2003 order and further moved for stay of execution. On 22 January 2003, this Court allowed petitioner's motion for a temporary stay and allowed

the petition for writ of habeas corpus for the limited purpose of considering whether the failure to include aggravating circumstances in petitioner's indictments is inconsistent with *Ring v. Arizona,* 536 U.S. 584, 153 L. Ed. 2d 556, and thus violative of the United States Constitution.

We begin our analysis of the above-stated issue with a brief history of those North Carolina statutes governing the crime of murder and proceedings in capital cases. Prior to any statutory codification of the crime of homicide, North Carolina common law divided homicide into three classes: (1) murder, the killing of a human being with malice aforethought, express or implied, for which the offender was punished by death; (2) manslaughter, a killing with sudden provocation and without malice, for which the convicted was "entitled to his clergy"; and (3) simple homicide, a killing that was justified or excusable, for which one would be deemed "unfortunate" but not punished. *State v. Boon,* 1 N.C. 191, 201-02 (1802); *see also State v. Rhyne,* 124 N.C. 847, 33 S.E. 128 (1899).

In 1893, our General Assembly codified the common-law crime of murder and divided it into two degrees, first-degree and second-degree murder. *See State v. Davis,* 305 N.C. 400, 422, 290 S.E.2d 574, 588 (1982). Under what is now N.C.G.S. § 14-17, the common-law definition of murder remained unchanged. *State v. Streeton,* 231 N.C. 301, 304, 56 S.E.2d 649, 652 (1949). Section 14-17 now provides:

A murder which shall be perpetrated by means of a nuclear, biological, or chemical weapon of mass destruction as defined in N.C.G.S. § 14-288.21, poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree, a Class A felony, and any person who commits such murder shall be punished with death or imprisonment in the State's prison for life without parole as the court shall determine pursuant to N.C.G.S. § 15A-2000, except that any such person who was under 17 years of age at the time of the murder shall be punished with imprisonment in the State's prison for life without parole. Provided, however, any person under the age of 17 who commits murder in the first degree while serving a prison sentence imposed for a prior murder shall be

punished with death or imprisonment in the State's prison for life without parole as the court shall determine pursuant to N.C.G.S. § 15A-2000. All other kinds of murder, including that which shall be proximately caused by the unlawful distribution of opium or any synthetic or natural salt, compound, derivative, or preparation of opium, or cocaine or other substance described in N.C.G.S. § 90-90(1)d., when the ingestion of such substance caused the death of the user, shall be deemed murder in the second degree, and any person who commits such murder shall be punished as a Class B2 felon.

N.C.G.S. § 14-17 (2001). However, the legislature "select[ed] from all murders denounced by the common law those deemed most heinous by reason of the mode of their perpetration and classifie[d] them as murder in the first degree, for which a greater punishment is prescribed." *Davis*, 305 N.C. at 422, 290 S.E.2d at 588. "Any other intentional and unlawful killing of a human being with malice aforethought, express or implied, remains murder as at common law, but is classified by the statute as murder in the second degree and a lesser sentence is prescribed." *Id.* at 423, 290 S.E.2d at 588.

In 1887, North Carolina first authorized the indictment of suspects for both first-degree and second-degree murder using a shortened version of an indictment. Act of Feb. 10, 1887, ch. 58, 1887 N.C. Sess. Laws 106 ("An act to simplify indictments in certain cases") (enacting what is now N.C.G.S. § 15-144). This unique charging instrument, which has become known in our parlance as the "short-form murder indictment," has been used in virtually every capital prosecution in North Carolina since then, and neither this Court nor the United States Supreme Court has ever deemed it unconstitutional. The importance of the short-form murder indictment is illustrated by its widely accepted use and impact.

Petitioner was indicted pursuant to two short-form murder indictments providing, in pertinent part, the following: "The jurors for the State upon their oath present that on or about the date of offense shown and in [Robeson County], [Henry Lee Hunt] unlawfully, willfully and feloniously and of malice aforethought did kill and murder [victim's name]." The indictments noted that they were sufficient to charge both first- and second-degree murder and that the offenses were committed in violation of N.C.G.S § 14-17.

In North Carolina, capital defendants are not only subject to indictment in accordance with N.C.G.S. § 15-144, but also receive

additional consideration concerning appointment of counsel in the case of indigency and are prosecuted under certain criminal procedures specifically reserved for capital cases. These additional protections ensure that such defendants receive all the due process of law to which they are entitled. Indigent capital defendants like petitioner receive the assistance of two attorneys, a lead and an associate attorney. N.C.G.S. § 7A-450(b1) (2001) (effective 1 July 1985). The associate attorney must be appointed "in a timely manner." *Id.* Subsequent to the time of Hunt's prosecution, this Court concluded that the failure to appoint a capital defendant assistant counsel is grounds for a new trial. *State v. Hucks*, 323 N.C. 574, 374 S.E.2d 240 (1988).

Chapter 15A, article 100 of our state's General Statutes, aptly titled "Capital Punishment," governs the procedures by which North Carolina capital defendants are prosecuted. N.C.G.S. § 15A-2000(a) provides, the same as it did at the time of petitioner's trial, notice to capital defendants that the trial court will hold a proceeding separate from the determination of their guilt to ascertain whether they should be sentenced to death or to life imprisonment. N.C.G.S. § 15A-2000(a)(1) (2001). A judge presides over the proceeding, which is held before a jury. The jury must determine the following: whether sufficient aggravating circumstance(s), as listed in N.C.G.S. § 15A-2000(e), exist; whether sufficient mitigating circumstance(s) exist; and based upon the weighing of the above-noted circumstances, whether defendant should be sentenced to death or to life imprisonment. N.C.G.S. § 15A-2000(b). The jury considers only the aggravating circumstances drawn from the exclusive list of eleven contained in N.C.G.S. § 15A-2000(e). The list contains neither a nonstatutory category nor a catchall provision. The State must prove to the jury that the aggravating circumstances exist beyond a reasonable doubt before it can consider whether the aggravators support a sentence of death. N.C.G.S. § 15A-2000(c)(1). The defendant must demonstrate the existence of mitigating circumstances by a preponderance of the evidence. *State v. Holden*, 321 N.C. 125, 158-59, 362 S.E.2d 513, 534 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). The jury's recommendation that the defendant be sentenced to death must be unanimous. N.C.G.S. § 15A-2000(b).

In addition to these statutory protections, either party may request what has become known as a *Watson* hearing when there is a question as to the legal sufficiency of a set of facts supporting the aggravating circumstances. *State v. Blake*, 317 N.C. 632, 634 n.1, 346 S.E.2d 399, 400 n.1 (1986); *see also State v. Watson*, 310 N.C. 384, 388,

312 S.E.2d 448, 452 (1984) (acknowledging that a pretrial hearing at which the trial court could determine whether there was evidence of aggravating circumstances promoted "judicial economy and administrative efficiency"). At the hearing, the trial court must determine whether there is any evidence of the aggravating circumstances defined by N.C.G.S. § 15A-2000(e). *Blake*, 317 N.C. at 634 n.1, 346 S.E.2d at 400 n.1. Furthermore, Rule 24 of the General Rules of Practice for the North Carolina Superior and District Courts mandates that a pretrial conference be held in all cases where a defendant is charged with "a crime punishable by death." Gen. R. Pract. Super. & Dist. Cts. 24, 2003 Ann. R. N.C. 23, 23-24 (Lexis) (effective July 1994). At the "Rule 24 hearing," as it has become known, the parties must consider, among other things, the charges against the defendant and the existence of evidence of aggravating circumstances. *Id.* However, the State is not bound by the aggravating circumstances discussed at the hearing, nor can the trial court order the State to declare the exact aggravating circumstances upon which it will rely. *State v. Chapman*, 342 N.C. 330, 339, 464 S.E.2d 661, 666 (1995), *cert. denied*, 518 U.S. 1023, 135 L. Ed. 2d 1077 (1996).

It is against this backdrop that we consider whether the United States Supreme Court's decision in *Ring* renders unconstitutional North Carolina's short-form murder indictments, the form of indictment under which petitioner was charged. The United States Supreme Court's decisions in *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000), laid the groundwork for the Court's decision in *Ring*. Briefly, in *Jones*, the Court examined the defendant's conviction and sentence under a federal carjacking statute. *Jones*, 526 U.S. at 229, 143 L. Ed. 2d at 317. In *Jones*, the defendant's sentence had been increased based upon the existence of what the government treated as a sentencing factor found by a trial judge and proven by a preponderance of the evidence. The United States Supreme Court concluded that the so-called sentencing factors were actually elements of separate offenses and that they "must be charged by indictment, proven beyond a reasonable doubt and submitted to a jury for its verdict." *Id.* at 251-52, 143 L. Ed. 2d at 331.

Similarly, in *Apprendi*, the United States Supreme Court examined a portion of New Jersey's hate-crime legislation that provided that a trial judge could increase a defendant's sentence beyond the statutory maximum if the judge found, by a preponderance of the evidence, that the underlying crime was motivated by race or other

impermissible factor. *Apprendi*, 530 U.S. at 468-69, 147 L. Ed. 2d at 442. The only issue before the Supreme Court was whether the above-noted statutory scheme violated the Sixth Amendment's guarantee to a trial by jury. The Court noted that the statutory labels "element" or "sentencing factor" were irrelevant in determining whether the Sixth Amendment required that the factors be proven to a jury beyond a reasonable doubt. *Id.* at 494, 147 L. Ed. 2d at 457. Rather, the inquiry should be whether "the required finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict." *Id.* The Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 147 L. Ed. 2d at 455.

In *Ring*, the United States Supreme Court held that Arizona's capital sentencing scheme violated the Sixth Amendment right to trial by jury. *Ring*, 536 U.S. at 609, 153 L. Ed. 2d at 576-77. The Court concluded that "[b]ecause Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury" and be proven beyond a reasonable doubt. *Id.* at 609, 153 L. Ed. 2d at 577 (quoting *Apprendi*, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 435 n.19).

Significantly, the United States Supreme Court in *Ring* observed that North Carolina was one of the twenty-nine states that "commit[s] sentencing decisions to juries" in death penalty cases. *Ring*, 536 U.S. at 608 n.6, 153 L. Ed. 2d at 576 n.6. This Court has previously held that North Carolina's capital sentencing scheme comports with both *Jones* and *Apprendi. State v. Braxton*, 352 N.C. 158, 531 S.E.2d 428 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); *State v. Lawrence*, 352 N.C. 1, 530 S.E.2d 807 (2000), *cert. denied*, 531 U.S. 1083, 148 L. Ed. 2d 684 (2001); *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000). We now hold that North Carolina's capital sentencing scheme complies with *Ring* in that aggravating circumstances must be submitted to and found by the jury beyond a reasonable doubt. *See* N.C.G.S. § 15A-2000(c)(1). .

In North Carolina criminal prosecutions, the use of indictments is a well-established practice. Our state Constitution has consistently provided that           .

> no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment. But any person, when

represented by counsel, may, under such regulations as the General Assembly shall prescribe, waive indictment in noncapital cases.

N.C. Const. art. I, § 22; *accord* N.C. Const. of 1868, art. I, § 12 (1949); N.C. Const. of 1776, Declaration of Rights § 8. An indictment, as referred to in the above-noted constitutional provision, is "a written accusation of a crime drawn up by the public prosecuting attorney and submitted to the grand jury, and by them found and presented on oath or affirmation as a true bill." *State v. Thomas*, 236 N.C. 454, 457, 73 S.E.2d 283, 285 (1952). To be sufficient under our Constitution, an indictment "must allege lucidly and accurately all the essential elements of the offense endeavored to be charged." *State v. Greer*, 238 N.C. 325, 327, 77 S.E.2d 917, 919 (1953).

> The purpose of such constitutional provisions is: (1) such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial[;] and (4) to enable the court, on conviction or plea of *nolo contendere* or guilty[,] to pronounce sentence according to the rights of the case.

*Id.*

Early common law required that indictments allege every element of the crime for which a defendant was charged, the manner in which the crime was carried out, and the means employed. *State v. Moore*, 104 N.C. 743, 750, 10 S.E. 183, 185 (1889) (noting that a particular short-form indictment would be invalid at common law because "it [did] not charge the means whereby the prisoner slew the deceased, nor the manner of the slaying"); 1 J.F. Archbold, *Criminal Procedure, Pleading and Evidence in Indictable Cases* 787 n.1 (8th ed. 1880) ("At common law, it is essentially necessary to set forth particularly the manner of the death and the means by which it was effected, and this statement may . . . be one of considerable length and particularity."). Until the 1800s, many states, including North Carolina, strictly adhered to the common-law pleading practices. 4 Wayne R. LaFave et al., *Criminal Procedure* § 19.1(a) (2d ed. 1999) [hereinafter LaFave, *Criminal Procedure*]; *see also State v. Owen*, 5 N.C. 452, 453 (1810) (overturning verdict because indictment "did not set forth *the length and depth* of the mortal wounds").

In the mid-1800s, disturbed by the reversal of convictions based upon technical errors in criminal pleadings, many states began statutory reforms to relax certain common-law pleading requirements. 4 LaFave, *Criminal Procedure* § 19.1(b). At the time of the reform movement, North Carolina's Constitution "confer[red] upon the General Assembly power to regulate and prescribe criminal as well as civil procedure, not inconsistent with its provisions, 'of all the courts below the Supreme Court.' " *Moore*, 104 N.C. at 751, 10 S.E. at 186 (quoting N.C. Const. of 1868, art. IV, § 12); *cf.* N.C. Const. art. IV, § 12 ("Except as otherwise provided by the General Assembly, the Superior Court shall have original general jurisdiction throughout the State."). Thus, "within constitutionally mandated parameters[,] the legislature has the power to prescribe the form of a bill of indictment." *State v. Lowe*, 295 N.C. 596, 603, 247 S.E.2d 878, 883 (1978).

In 1811, reacting to a case in which the verdict was overturned based upon an indictment's failure to allege, among other things, the depth of the victim's wound, the North Carolina legislature passed what is now codified as N.C.G.S. § 15-153. *State v. Moses*, 13 N.C. 452, 463 (1830) ("The act of 1811 . . . passed the year after [the *Owen*] case was decided and we have reason to believe was caused by it.") (citing *Owen*, 5 N.C. 452). N.C.G.S. § 15-153 provides in substance the same as its 1811 ancestor, that an indictment

> is sufficient . . . if it expresses the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment.

N.C.G.S. § 15-153 (2001); *see also State v. Taylor*, 280 N.C. 273, 277, 185 S.E.2d 677, 680 (1972) (noting that N.C.G.S. § 15-153 "was designed to free the courts from the fetters of form, technicality and refinement not concerned with the substance of the charge").

The enactment of legislation authorizing the short-form murder indictment in 1887 was an attempt by the General Assembly to reform our criminal pleading practice. *See State v. Avery*, 315 N.C. 1, 12-14, 337 S.E.2d 786, 792-93 (1985); *Moore*, 104 N.C. at 750-51, 10 S.E. at 185-86; *see also* ch. 58, 1887 N.C. Sess. Laws at 106 (entitled "An act to simplify indictments in certain cases"). The statute authorizing the use of short-form murder indictments, N.C.G.S. § 15-144, provides the same now as it did when enacted: "[I]t is sufficient in describing mur-

der to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder [victim's name] . . . ." N.C.G.S. § 15-144 (2001).

Since the genesis of the short-form murder indictment in 1887, its validity has continually been avowed by the General Assembly. In 1893, when the legislature divided the common-law crime of murder into two degrees, it provided, by the same act, that "[n]othing herein contained shall be construed to require any alteration or modification of the existing form of indictment for murder." Act of Feb. 11, 1893, ch. 85, sec. 3, 1893 N.C. Sess. Laws 76, 76-77 (The relevant portion of the current version of the statute, N.C.G.S. § 15-172 (2001), provides the following: "Nothing contained in the statute law dividing murder into degrees shall be construed to require any alteration or modification of the existing form of indictment for murder."); *see also State v. Kirksey*, 227 N.C. 445, 448-49, 42 S.E.2d 613, 615 (1947) (noting that "the existing form of indictment" referred to in section 15-172 included short-form murder indictments as authorized by section 15-144).

This Court affirmed the General Assembly's intent to preserve the short-form murder indictment's usage, even after the most recent changes to the North Carolina Constitution and statutory changes to our criminal procedure laws. In 1971, North Carolina adopted the present incarnation of our state Constitution mandating the following: "In all criminal prosecutions, every person charged with a crime has the right to be informed of the accusation . . . ." N.C. Const. art. I, § 23. Shortly thereafter, in 1973, the General Assembly passed our Criminal Procedure Act (the Act), which was, as its name indicates, sweeping legislation regarding pretrial procedures in criminal prosecutions. Act of Apr. 11, 1974, ch. 1286, sec. 1, 1973 N.C. Sess. Laws (2d Sess.) 490, 490 ("An act to amend the laws relating to pretrial criminal procedure"). As part of the Act, the legislature provided that criminal pleadings must contain "[a] plain and concise factual statement in each count which . . . asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." *Id.* at 535 (codified as N.C.G.S. § 15A-924(a)(5)).

Upon examining a challenge to short-form murder indictments in light of the above-noted constitutional and statutory provisions, this Court expressly found that such indictments remained a valid charging instrument, as neither Article I, Section 23 of our state

Constitution nor N.C.G.S. § 15A-924(a)(5) expressly or implicitly repealed the statute authorizing the indictment's use. *Avery*, 315 N.C. at 14, 337 S.E.2d at 793. In sum, although changes were made to the way our courts indict for crimes other than murder, the short-form murder indictment remained a special instrument, statutorily distinguished from other indictments. The General Assembly again reaffirmed the validity of the short-form indictment by expanding its use to charge other serious felonies, including rape, *see* N.C.G.S. § 15-144.1 (2001) (enacted in 1977); *Lowe*, 295 N.C. at 603-04, 247 S.E.2d at 883-84 (affirming validity of short-form rape indictment), and statutory sex offense, *see* N.C.G.S. § 15-144.2 (2001) (enacted in 1979); *State v. Edwards*, 305 N.C. 378, 380, 289 S.E.2d 360, 362 (1982) (upholding short-form indictments charging sex offenses).

The Fifth and Sixth Amendments to the United States Constitution operate in tandem to guarantee those accused of a federal crime the right to indictment as the method by which they are "informed of the nature and cause of the accusations" against them. U.S. Const. amends. V, VI; *Harris v. United States*, 536 U.S. 545, 549, 153 L. Ed. 2d 524, 532 (2002); *see also Jones*, 526 U.S. at 252, 143 L. Ed. 2d at 331 (noting that the so-called sentencing factors were actually elements of separate crimes and must therefore be charged in indictment); *Almendarez-Torres v. United States*, 523 U.S. 224, 228, 140 L. Ed. 2d 350, 358 (1998) (noting that indictment must allege all of the elements of a crime); *Hamling v. United States*, 418 U.S. 87, 117, 41 L. Ed. 2d 590, 620 (1974) (same). The United States Constitution does not, however, apply the same principles to state-court prosecutions. For instance, the United States Supreme Court has never applied the Fifth Amendment's guarantee to indictment by a grand jury to state prosecutions. *Alexander v. Louisiana*, 405 U.S. 625, 633, 31 L. Ed. 2d 536, 543-44 (1972); *see also Hodgson v. Vermont*, 168 U.S. 262, 272, 42 L. Ed. 461, 464 (1897) ("[T]he words 'due process of law' in the Fourteenth Amendment of the Constitution of the United States do not necessarily require an indictment by a grand jury in a prosecution by a State for murder."); *Hurtado v. California*, 110 U.S. 516, 538, 28 L. Ed. 232, 239 (1884) (same). In observing that it had never applied the above-noted Fifth Amendment guarantee to states, the Supreme Court expressly stated that "the Due Process Clause . . . does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury." *Alexander*, 405 U.S. at 633, 31 L. Ed. 2d at 543.

STATE v. HUNT

[357 N.C. 257 (2003)]

Perhaps most important, in *Apprendi* and *Ring*—cases pivotal to petitioner's claim in the present case—the United States Supreme Court clearly indicated that those decisions did not concern or have any applicability to allegedly defective indictments. *Ring*, 536 U.S. at 597 n.4, 153 L. Ed. 2d at 569 n.4 ("Ring does not contend that his indictment was constitutionally defective."); *Apprendi*, 530 U.S. at 477 n.3, 147 L. Ed. 2d at 447 n.3 ("Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment."). In *Apprendi*, the Court *expressly* recognized that the Fourteenth Amendment "has not . . . been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury.' " *Apprendi*, 530 U.S. at 477 n.3, 147 L. Ed. 2d at 447 n.3. In *Harris*, the United States Supreme Court recently affirmed that while only federal prosecutions require presentment or indictment by grand jury, the Sixth Amendment guarantee to trial by an impartial jury, including the right to have all elements proven beyond a reasonable doubt, applies in *both* state and federal prosecutions. *Harris*, 536 U.S. at 549, 153 L. Ed. 2d at 532-33.

In contrast to its application of the Fifth Amendment's indictment guarantee, the United States Supreme Court has unequivocally applied the Sixth Amendment's edict that the accused be informed of criminal accusations against him. *In re Oliver*, 333 U.S. 257, 273, 92 L. Ed. 682, 694 (1948). In defining the parameters of state criminal defendants' rights to notice under the Sixth Amendment, the Supreme Court has concluded that such defendants have a right to *"reasonable notice"* sufficient to ensure that they are afforded an opportunity to defend against the charges. *Id.* As stated by the Supreme Court over one hundred years ago in *Hodgson*,

> in *all* criminal prosecutions the accused must be informed of the nature and cause of the accusation against him; that in no case can there be, in criminal proceedings, due process of law where the accused is not thus informed, and that the information which he is to receive is that which will acquaint him with the essential particulars of the offen[s]e, so that he may appear in court prepared to meet every feature of the accusation against him.

168 U.S. at 269, 42 L. Ed. at 463 (emphasis added).

This Court has recognized that the Fifth Amendment's guarantee to indictment by a grand jury does not apply in the context of a challenge to state-court indictment. In *Wallace*, 351 N.C. 481, 528 S.E.2d

326, we examined a challenge to short-form indictments charging murder, rape, and sex offense in which the defendant claimed that the indictments failed to allege all elements of the crimes charged. In so doing, this Court acknowledged that the due process and notice requirements under the Sixth Amendment inured to state prosecutions, as stated by the Supreme ·Court in *Hodgson. Id.* at 507, 528 S.E.2d at 342-43. We further recognized that the Fifth Amendment's guarantee to indictment by a grand jury was not applicable to the states, and as such, "all the elements or facts which might increase the maximum punishment for a crime" do not necessarily need to be listed in an indictment. *Id.* at 508, 528 S.E.2d at 343. Our holding in *Wallace* is consistent with the United States Supreme Court's decision in *Ring*: that the Fifth Amendment would not require aggravators, even if they were fundamental equivalents of elements of an offense, to be pled in a state-court indictment.

Short-form indictments, including the ones used to charge petitioner in the instant case, comport with the statutory provisions governing indictment practices. Given the instrument's genesis and history, short-form murder indictments are special instruments that arose separate from and coexist with the statutory requirements of N.C.G.S. § 15A-924(a)(5), which mandates that indictments contain a "plain and concise factual statement in each count." Consistent with the concept of construing statutes *in pari materia,* our General Assembly could not have intended a conflict with other indictment statutes or a statutory violation arising from the use of short-form indictments. *See Brown v. Flowe,* 349 N.C. 520, 523-24, 507 S.E.2d 894, 896 (1998) (noting that "[w]hen multiple statutes address a single subject, this Court construes them *in pari materia* to determine and effectuate the legislative intent").

In support of his argument that the aggravating circumstances must have been pled in his indictments, petitioner relies heavily on our decision in *State v. Lucas,* 353 N.C. 568, 548 S.E.2d 712 (2001). In *Lucas,* this Court invalidated the defendant's two noncapital felony sentences, partially because certain factors increasing the defendant's sentences were not pled in his indictment. *Id.* at 597-98, 548 S.E.2d at 731. Defendant's application of *Lucas* misapprehends the law. In *Lucas,* we were not concerned with a short-form indictment. As we indicated in *Lucas,* if the State wishes to seek a firearm enhancement *in addition to* a conviction for murder, rape, or sex offense, the enhancement must be pled in the indictment, even if the charging instrument is a short-form indictment. *Id.* at 598, 548 S.E.2d

at 732. However, the principles of *Lucas* do not otherwise apply to short-form indictments.

Unlike a short-form indictment, the indictment in *Lucas* was not exempt from the statutory requirement, pursuant to N.C.G.S. § 15A-924, that indictments must state every element of the crime charged. It follows that crimes charged pursuant to a short-form indictment—murder, rape, and sex offense—are not governed by the principles espoused in *Lucas*. Such an application of *Lucas* comports with well-established case law holding that in prosecutions where short-form indictments are not used and the indictment alleges elements of a lesser crime, there is no statutory authority (sometimes referred to as "jurisdiction") to enter judgment based upon a verdict finding defendant guilty of the greater crime. *See State v. Jerrett*, 309 N.C. 239, 307 S.E.2d 339 (1983) (noting that although the legislature may prescribe the form of indictment sufficient to allege a crime without listing all elements and had done so in certain cases, it had not done so in the case of kidnapping); *State v. Perry*, 291 N.C. 586, 231 S.E.2d 262 (1977) (holding, prior to provisions for short-form rape indictments, that, unlike murder indictment, indictment sufficient to charge second-degree rape was not sufficient to charge first-degree rape); *see also State v. Moore*, 316 N.C. 328, 341 S.E.2d 733 (1986); *State v. Goss*, 293 N.C. 147, 235 S.E.2d 844 (1977). The legislature has thus made it clear that murder and other crimes for which it has authorized the use of short-form indictments are to be treated differently in the application of N.C.G.S. § 15A-924 (indictment must express the charge in a plain, intelligible, and explicit manner). *Cf.* N.C. Const. art. I, § 12 (treating capital crimes differently by prohibiting waiver of indictment in those cases); N.C.G.S. § 15A-642(b) (2001) (same); *Thomas*, 236 N.C. at 457, 73 S.E.2d at 285 (same).

As there is no statutory requirement that aggravating circumstances be pled in murder indictments, the only remaining potential bar to the use of the short-form murder indictment would be constitutional. *See State v. Harris*, 145 N.C. 456, 458, 59 S.E. 115, 116 (1907) (" 'To be informed of the accusation against him' is the requirement of our Bill of Rights, and unless such legislation is in violation of this principle or in contravention of some express constitutional provision, it should and must be upheld by the courts."). As noted *supra*, neither *Ring* nor *Apprendi* purports to address or dictate the contents of a state-court murder indictment. Furthermore, to this date, the United States Supreme Court has not applied the Fifth Amendment indictment requirements to the states. *See Alexander*,

405 U.S. at 633, 31 L. Ed. 2d at 543-44. Thus, in answering the question before the Court today, *Ring* does not require that aggravating circumstances be alleged in state-court indictments.

Our independent review of decisions from our sister states reveals that to this date every state court addressing the above-noted issue has held that *Ring* does not require that aggravating circumstances be alleged in the indictment. *See, e.g., Stallworth v. State,* —— So. 2d ——, ——, 2003 Ala. Crim. App. LEXIS 21, at *22-23 (Ala. Crim. App. Jan. 31, 2003) (No. CR-98-0366) (indicating that *Ring* did not change prior case law holding that aggravators do not need to be pled in an indictment); *Bottoson v. Moore,* 833 So. 2d 693, 695 (Fla.) (per curiam) (rejecting arguments based upon *Ring*), *cert. denied,* —— U.S. ——, 154 L. Ed. 2d 564 (2002); *Terrell v. State,* 276 Ga. 34, ——, 572 S.E.2d 595, 602 (2002) (concluding in a post-*Ring* challenge to an indictment that the indictment need not allege aggravating circumstances); *State v. Gilbert,* 103 S.W.3d 743, 747 (Mo. 2003) (*en banc*) (holding that *Ring* had no effect on the court's previous rejection of the argument that indictments need to allege aggravators); *State v. Oatney,* 335 Or. 276, ——, 66 P.3d 475, 487 (2003) (holding that *Ring* did not address the issue of whether aggravators needed to be pled in the indictment and, therefore, that court's prior holding that an indictment need not contain aggravators remained unchanged); *State v. Berry,* —— S.W.2d ——, ——, 2003 Tenn. Crim. App. LEXIS 316, *16 (Tenn. Crim. App. Apr. 10, 2003) (No. M2001-02023-CCA-R3-DD) (holding, post-*Ring*, that *Apprendi* did not apply to require the State to include aggravators in indictments).

The only possible constitutional implication that *Ring* and *Apprendi* may have in relation to our capital defendants is that they must receive reasonable notice of aggravating circumstances, pursuant to the Sixth Amendment's notice requirement. "The General Assembly has the undoubted right to enact legislation . . . to modify old forms of bills of indictment[] or [to] establish new ones, provided the form established is sufficient to apprise the defendant with reasonable certainty of the nature of the crime of which he stands charged." *Harris,* 145 N.C. at 457-58, 59 S.E. at 116.

As mentioned above, this Court has consistently and unequivocally upheld short-form murder indictments as valid under both the United States and the North Carolina Constitutions. *See, e.g., Braxton,* 352 N.C. at 173-75, 531 S.E.2d at 437; *Wallace,* 351 N.C. at 503-08, 528 S.E.2d at 341-43; *State v. Kilpatrick,* 343 N.C. 466, 472, 471 S.E.2d 624, 628 (1996); *Avery,* 315 N.C. at 12-14, 337 S.E.2d at 792-93.

Relevant to our discussion herein, in previous challenges to the short-form murder indictment's failure to allege statutory aggravating circumstances, this Court has held that constructive, statutory notice via the statute in which the aggravators are listed—N.C.G.S. § 15A-2000(e)—is adequate to satisfy the constraints of due process as dictated by the United States Constitution's Sixth Amendment and the North Carolina Constitution. *Holden*, 321 N.C. at 154, 362 S.E.2d at 531 ("The notice provided by this statute is sufficient to satisfy the constitutional requirements of due process."); *State v. Young*, 312 N.C. 669, 675, 325 S.E.2d 181, 185 (1985) (holding that the statutory notice provided by section 15A-2000(e) is sufficient to satisfy constitutional requirements of due process); *State v. Williams*, 304 N.C. 394, 422, 284 S.E.2d 437, 454 (1981) (same), *cert. denied*, 456 U.S. 932, 72 L. Ed. 2d 450 (1982); *State v. Taylor*, 304 N.C. 249, 257, 283 S.E.2d 761, 768 (1981) (same), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983).

Petitioner argues that the above-noted cases do not support the argument that aggravators need not be pled in an indictment. Petitioner contends that the cases are inapplicable because this Court has analyzed aggravators as sentencing factors, rather than as elements of offenses, and that this reasoning is the basis for our conclusion that aggravators need not be pled in the indictment. *See, e.g.*, *State v. Golphin*, 352 N.C. 364, 396-97, 533 S.E.2d 168, 193-94 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001); *Taylor*, 304 N.C. at 257, 283 S.E.2d at 768. Petitioner also contends that these cases are no longer controlling because in at least one case, *Golphin*, 352 N.C. at 397, 533 S.E.2d at 193, we specifically relied upon the United States Supreme Court's decision in *Walton v. Arizona*, 497 U.S. 639, 111 L. Ed. 2d 511 (1990), which was expressly overruled by the Court in *Ring*.

Petitioner's arguments are unavailing for two reasons. First, this Court has concluded, post-*Apprendi*, that the failure to list other elements of first-degree murder, including premeditation and deliberation, in a short-form murder indictment does not violate either the North Carolina or the United States Constitution. *Braxton*, 352 N.C. at 173-75, 531 S.E.2d at 436-38. Thus, if aggravators are the functional equivalent of elements for the purposes of complying with the Sixth Amendment notice requirement, this Court has already indicated that aggravators, being akin to other elements of murder such as premeditation and deliberation, do not necessarily have to be listed in the short-form murder indictment for a defendant to receive sufficient

notice. Second, our reference to *Walton* in *Golphin* is of no import to the issue presented here, as *Ring* overruled only that portion of *Walton* referring to aggravators as sentencing factors for the purpose of defendant's Sixth Amendment right to trial by jury. *See Ring*, 536 U.S. at 609, 153 L. Ed. 2d at 576-77 (overruling "*Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty").

The nature of the aggravators themselves ensures that defendants will be reasonably apprised of the evidence that could lead to a sentence of death. N.C.G.S. § 15A-2000(e) limits to eleven the list of possible aggravators against which defendants must defend themselves. The list of aggravating circumstances is exclusive, relatively short, and contains no catchall provision. *Cf. Lynch v. State*, 841 So. 2d 362, 378 (Fla. 2003) (holding that there is no reason for the State to notify defendants of aggravators, as the list of aggravators that can be imputed to defendants is limited to those enumerated in the relevant state statute).

Petitioner argues that the analysis this Court applied in *Lucas* is squarely applicable to the instant case, as the firearm sentencing enhancement at issue in *Lucas* is indistinguishable from the aggravating circumstances at issue in the present case. We disagree. As noted *supra*, the application of our decision in *Lucas* is limited to those situations in which a short-form indictment is not the charging instrument. Furthermore, capital prosecutions present an inherently different situation than those in which defendants are indicted for crimes that may or may not subject them to a firearm or other sentencing enhancement. Unlike defendants for whom the State had an option to seek a firearm enhancement, neither capital defendants nor their attorneys will *ever* be blind-sided with aggravating circumstances. Just because a defendant is indicted for a certain noncapital crime, it does not necessarily follow that the State will later seek to attach a firearm enhancement. However, first-degree murder is the *only* crime to which the exclusive list of section 15A-2000(e) aggravators can apply. N.C.G.S. § 15A-2000(e) is necessarily implicated at the very moment a defendant is informed of the State's intent to seek the death penalty against him, or perhaps even earlier. As we have previously held, once N.C.G.S. § 15A-2000(e) has been triggered, the exclusiveness of the list of only eleven aggravators in that section is sufficient to provide reasonable notice. *See Holden*, 321 N.C. at 153-54, 362 S.E.2d at 531; *Young*, 312 N.C. at 675, 325 S.E.2d at 185;

*Williams*, 304 N.C. at 422, 284 S.E.2d at 454; *Taylor*, 304 N.C. at 257, 283 S.E.2d at 768. Given the limited applicability of section 15A-2000(e), due process does not require that short-form murder indictments state the aggravators or even allude to the statutory provision in which they are enumerated.

Moreover, as noted by *amici*, many complications would invariably arise if we required aggravators to be pled in murder indictments. These problems include determining whether the grand jury would need to be "death-qualified" and what procedures, if any, would be employed so that the State could acquire a superseding indictment containing aggravating circumstances it may discover after defendant has been indicted. In addition, with the aggravating circumstances already determined by the grand jury, both the State and the defendant may lose the benefit of the pretrial *Watson* hearing. These and other procedural challenges that our court system would inevitably have to confront are akin to the myriad of technical problems that short-form murder indictments were intended to alleviate when first authorized in 1887. *See* 4 LaFave, *Criminal Procedure* § 19.1(b), (c).

We are further persuaded that short-form murder indictments need not contain aggravators because they are not the only mechanism in place today by which capital defendants, with the assistance of their two attorneys, could receive *actual* notice of aggravating circumstances. The parties to a capital prosecution *must* consider the existence of aggravating circumstances at the Rule 24 hearing. *See* Gen. R. Pract. Super. & Dist. Cts. 24, 2003 Ann. R. N.C. at 23-24. Defendants have the option of requesting a bill of particulars as to the evidence of the aggravating circumstances the State may seek to introduce against defendant, although the State is not bound by the aggravators it discloses prior to trial. N.C.G.S § 15A-925(c). Certain aggravating circumstances and evidence related thereto may become evident during the pretrial discovery period, at a pretrial probable cause hearing held pursuant to N.C.G.S. § 15A-606, or at other pretrial proceedings. *See, e.g.*, *Parker v. State*, 917 P.2d 980, 986-87 (Okla. Crim. App. 1996) (concluding that an indictment's failure to allege element of crime was cured by the defendant's actual notice of facts constituting the element at preliminary hearing), *cert. denied*, 519 U.S. 1096, 136 L. Ed. 2d 721 (1997). These additional protections also lend support to our holding that aggravating circumstances need not be alleged in an indictment. Given the above-noted discussion, we cannot conclude that *Ring* requires state-court murder indictments

to allege the aggravating circumstances to be presented against capital defendants.

## VI.

For the first time on appeal, the State argues that the decisions of the United States Supreme Court supporting the petition for writ of habeas corpus do not provide petitioner with a means for relief, because the application of these decisions to petitioner is barred by *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334 (1989). In *Teague*, the United States Supreme Court held that new rules of criminal procedure cannot be applied retroactively on federal collateral review unless they fall within two narrow exceptions. *Id.* at 310, 103 L. Ed. 2d at 356. This Court adopted the application of *Teague* to collateral criminal proceedings in this state in *State v. Zuniga*, 336 N.C. 508, 444 S.E.2d 443 (1994). According to the State, any new rule contained in *Ring* and *Apprendi* should apply only to cases on direct review and to those cases falling into the two exceptions. Because we have reviewed petitioner's arguments and found them to be without merit, the State's argument is moot and warrants no further discussion.

In North Carolina, the short-form murder indictment has survived over a hundred years as a valid method for charging capital defendants with the crime of first-degree murder. This Court has consistently concluded that such an indictment violates neither the North Carolina nor the United States Constitution. Relevant to the issues presented by the case at issue, the United States Supreme Court and this Court have previously indicated that the Fifth Amendment to the United States Constitution does not apply to state prosecutions. As such, the Fifth Amendment does not require that aggravators be found by a grand jury and pled within the resulting indictment.

Despite petitioner's contentions to the contrary, nothing in the United States Supreme Court's decision in *Ring*, or any other case, requires us to reach a different result today. The trial court did not err in denying the petition for writ of habeas corpus. Accordingly, the trial court's order denying the writ is affirmed, and this Court's stay of execution is dissolved.

AFFIRMED.