BRADY, Justice.
The primary question presented for review is whether sentencing errors which violate a defendant's Sixth Amendment right to jury trial pursuant to the recent United States Supreme Court decision in Blakely v. Washington, ___ U.S. ___, 159 L. Ed. 2d 403 (2004), may be deemed harmless. We conclude that Blakely errors are structural and modify and affirm the decision of the Court of Appeals remanding defendant's case to Gaston County Superior Court for resentencing. Preliminarily, this Court must also examine the effect of Blakely on criminal sentencing in North Carolina. We conclude that Blakely applies to North Carolina's Structured Sentencing Act and that N.C.G.S. ? 15A-1340.16, which is a part of that Act, violates the Sixth Amendment as interpreted in Blakely.
These holdings apply to cases "in which the defendants have not been indicted as of the certification date of this opinion and to cases that are now pending on direct review or are not yet final." State v. Lucas, 353 N.C. 568, 598, 548 S.E.2d 712, 732 (2001). See State v. Hinnant, 351 N.C. 277, 523 S.E.2d 663 (2000); Griffith v. Kentucky, 479 U.S. 314, 93 L. Ed. 2d 649 (1987).
FACTUAL BACKGROUND
On 3 December 2001, defendant Levar Jamel Allen was indicted for child abuse inflicting serious bodily injury, a Class C felony. The indictment alleged that on 7 November 2001, defendant intentionally and severely burned his nine month old son, thereby causing serious injury to the child. Defendant pleaded not guilty to the offense and was tried by jury at the 28 January 2003 term of Gaston County Superior Court before Judge J. Gentry Caudill. On 31 January 2003, the jury unanimously found defendant guilty of felony child abuse inflicting serious bodily injury.
During the sentencing proceeding, Judge Caudill calculated that defendant had a prior record level of II, based upon one previous Class 1 misdemeanor conviction and one previous Class A1 misdemeanor conviction. Judge Caudill made additional findings of aggravating and mitigating factors. In aggravation, Judge Caudill found by a preponderance of the evidence that defendant's abuse of his son was especially heinous, atrocious, or cruel. In mitigation, Judge Caudill found three factors by a preponderance of the evidence: (1) "the defendant has been a person of good character or has had a good reputation in the community," (2) "the defendant has a support system in the community," and (3) "the defendant was punished emotionally." Judge Caudill determined that "factors in aggravation outweigh the factors in mitigation and that an aggravated sentence is justified." Finally, Judge Caudill imposed an aggravated sentence of 115 months minimum to 147 months maximum imprisonment. Defendant's maximum aggravated sentence is eighteen months longer than the maximum presumptive sentence permitted by statute for a Class C felony, prior record level II.
Defendant appealed to the North Carolina Court of Appeals, contesting, among other assignments of error, the sufficiency of evidence supporting Judge Caudill's finding of the especially heinous, atrocious, or cruel aggravating factor. On 29 June 2004, while his direct appeal was pending in the Court of Appeals, defendant filed a motion for appropriate relief in that Court. In his motion, defendant argued that the Sixth Amendment to the United States Constitution required the especially heinous, atrocious, or cruel aggravating factor to be proved to a jury beyond a reasonable doubt. Because Judge Caudill found that aggravating factor by a preponderance of the evidence, defendant requested a new sentencing proceeding. In support of his motion, defendant cited the United States Supreme Court's decision in Blakely v. Washington, ___ U.S. ___, 159 L. Ed. 2d 403 (2004), which applied the Court's earlier holding in Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435 (2000), to invalidate Washington State's "exceptional" sentencing system. On 7 September 2004, a unanimous panel of the Court of Appeals issued an opinion finding no error in defendant's trial, but remanded defendant's case for resentencing pursuant to Blakely and this Court's 1983 decision in State v. Ahearn, 307 N.C. 584, 300 S.E.2d 689 (1983).
PROCEDURAL POSTURE
This matter is before the Court on the State's petition for discretionary review, allowed 23 September 2004. Defendant contends that this Court lacks subject matter jurisdiction to review the Court of Appeals' decision because he raised the question of Blakely error in the Court of Appeals by a motion for appropriate relief. In support of his argument, defendant cites N.C.G.S. ? 15A-1422(f), which states that "[d]ecisions of the Court of Appeals on motions for appropriate relief that [are made more than ten days after entry of judgment] are final and not subject to further review by appeal, certification, writ, motion, or otherwise."
We agree that N.C.G.S. ? 15A-1422(f) bars this Court's review of Court of Appeals' decisions on most motions for appropriate relief from noncapital judgments and convictions. See State v. Barrett, 307 N.C. 126, 302 S.E.2d 632 (1982) (dismissing the defendant's appeal of the Court of Appeals decision denying his motion for appropriate relief). This restriction has the desirable effect of imparting finality to post-conviction proceedings and freeing limited judicial resources for attention to cases on direct review, which involve capital or constitutional questions, and questions in dispute among the members of the Court of Appeals as reflected by a dissenting opinion. N.C.G.S. ?? 7A-27(a), 30 (2003). Collateral review of non-capital judgments and convictions is, in general, not a core function of the Supreme Court of North Carolina.
However, collateral review is proper in certain rare circumstances, as when the Court of Appeals applies a new federal constitutional rule of widespread effect on the administration of justice throughout the state. Cf. In re Brownlee, 301 N.C. 532, 548, 272 S.E.2d 861, 870 (1981) ("Under exceptional circumstances this [C]ourt will exercise power under [Article IV, Section 12, Clause 1 of the North Carolina Constitution] in order to consider questions which are not presented according to our rules of procedure; and this [C]ourt will not hesitate to exercise its general supervisory authority when necessary to promote the expeditious administration of justice.") (citations omitted); State v. Stanley, 288 N.C. 19, 26, 215 S.E.2d 589, 594 (1975) ("This Court will not hesitate to exercise its rarely used general supervisory authority when necessary to promote the expeditious administration of justice. Under unusual and exceptional circumstances [the Court] will exercise this power to consider questions which are not properly presented according to [its] rules.") (citations omitted). Read broadly, the Court of Appeals' decision in Allen, applying Blakely, calls into question the constitutionality of North Carolina's Structured Sentencing Act and identifies a new type of structural error which is reversible per se. For these reasons Allen and Blakely have the potential to affect a significant number of criminal sentences in North Carolina.
Because a prompt and definitive resolution of this issue is necessary to ensure the continued fair and effective administration of North Carolina's criminal courts, we exercise the supervisory authority of this Court, which is embodied in Article IV, Section 12, Clause 1 of the North Carolina Constitution, and review the opinion of the Court of Appeals. In so doing, we note that N.C.G.S. ? 15A-1422(f) cannot restrict this Court's constitutionally granted power to "issue any remedial writs necessary to give it general supervision and control over the proceedings of the other courts." N.C. Const. art. IV, ? 12, cl. 1; see also id. art. IV, ? 1 ("The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government . . . .").
For the reasons stated above, we determine that the State's petition for discretionary review of the decision of the Court of Appeals resolving defendant's motion for appropriate relief is properly before this Court. We now consider the effect of Blakely v. Washington on North Carolina's Structured Sentencing Act and the proper standard of review to be applied when Blakely error is identified in a defendant's case.
NORTH CAROLINA STRUCTURED SENTENCING
In 1979 the North Carolina General Assembly enacted presumptive sentencing legislation, commonly known as the "Fair Sentencing Act," in "response to a perceived need for certainty in sentencing, to a perceived evil of disparate sentencing, and to a perceived problem in affording trial judges and parole authorities unbridled discretion in imposing sentences." Ahearn, 307 N.C. at 594, 300 S.E.2d at 695; An Act to Establish a Fair Sentencing System in North Carolina Criminal Courts, ch. 760, 1979 N.C. Sess. Laws 850. Before enactment of this legislation, North Carolina, like most other states, utilized "typical indeterminate sentencing law." Stevens H. Clarke, Law of Sentencing, Probation and Parole in North Carolina 39-40 (Inst. Of Gov't, Univ. Of N.C. at Chapel Hill 1991) [hereinafter, Clarke, Sentencing]. "Ranges of prison terms were wide for broadly defined crimes," and "[n]o criteria for sentencing were set by statute, court decision, or court rules." Id. at 40.
North Carolina's Fair Sentencing Act was revised several times before it went into effect on 1 July 1981. See N.C.G.S. ? 15A-1340.1 (1995). The act stated that
[t]he primary purposes of sentencing a person convicted of a crime are to impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.
Id. ? 15A-1340.3 (Supp. 1981).
In 1993 the General Assembly further reformed North Carolina's criminal sentencing system, enacting legislation commonly known as the "Structured Sentencing Act" in response to rising prison populations. Clarke, Sentencing 1-4 (Supp. 1994). Structured sentencing, which classifies convicted criminal defendants for sentencing purposes based upon the severity of their crime (offense class) and gravity of their prior criminal record (prior record level), became effective on 1 October 1994 and is still in effect today. An Act To Provide for Structured Sentencing in North Carolina Consistent with the Standard Operating Capacity of the Department of Correction and Local Confinement Facilities and To Redefine State and County Responsibilities for the Confinement of Misdemeanants, ch. 538, 1993 N.C. Sess. Laws 2299-2313 (codified as amended at N.C.G.S. ch. 15A, art. 81B (2003)) (effective date Oct. 1, 1994)). The Structured Sentencing Act repealed the Fair Sentencing Act and remedied many of the perceived weaknesses of that earlier legislation, including that the Fair Sentencing Act "applied only to felonies, did not control the sentence disposition (leaving judges free to impose probation unless forbidden by other statutes), and set only a presumptive prison/jail term." Clarke, Sentencing 9 (Supp. 1994). Repealing Chapter 15A, Article 85A of the North Carolina General Statutes, the Structured Sentencing Act abolished parole for certain convicted felons and ensured that new felony offenders serve their entire sentence. Ch. 538, sec. 24, 1993 N.C. Sess. Laws at 2341.
Pursuant to the Structured Sentencing Act, sentencing judges must impose both a minimum and maximum active, intermediate, or community punishment for felony convictions. N.C.G.S. ? 15A-1340.13 (2003). Separate statutory punishment charts dictate a defendant's minimum and maximum sentence. See id. ? 15A-1340.17 (2003). The length of term imposed depends upon the offense class, the defendant's prior record level, and the presence of aggravating or mitigating factors. Id. at ?? 15A-1340.13,-1340.14,-1340.16,-1340.17 (2003).
The statutory punishment chart for minimum sentences consists of a grid on which offense classes and prior record levels are the axes. Id. ? 15A-1340.17(c).[1] Ranges of possible minimum sentences, which are set forth for every combination of offense class and prior record level, are either presumptive, as in a typical case; mitigated, as in less severe cases; or aggravated, as in the worst cases. Id. Maximum sentences corresponding to every possible minimum sentence are listed in separate tables.[2] Id. ? 15A-1340.17(d), (e), (e1).
Before selecting a convicted criminal defendant's minimum sentence, the sentencing judge must consider whether aggravating and mitigating factors are present, weigh any existing factors, and decide upon a mitigated, presumptive, or aggravated punishment range. Id. ? 15A-1340.16(a)-(c). The State carries the burden of proving by a preponderance of the evidence that an aggravating factor exists and the defendant carries a corresponding burden to prove that a mitigating factor exists. Id. ? 15A-1340.16(a). Statutory aggravating and mitigating factors are enumerated in section 15A-1340.16(d) and (e); however, this list is not exclusive and both the prosecutor and defendant are entitled to present evidence of any other "factor reasonably related to the purposes of sentencing." Id. ? 15A-1340.16(d)(20), (e)(21). The judge may impose an aggravated or mitigated sentence whenever he finds aggravating or mitigating factors to exist, but the decision to depart from the presumptive range is wholly within the trial court's discretion. Id. ? 15A-1340.16 (a), (b).
RIGHT TO JURY TRIAL
The right to jury trial is the only constitutional guarantee preserved both in the body of the Constitution and the Bill of Rights. U.S. Const. art. III, ? 2, cl. 3; id. amend. VI; Duncan v. Louisiana, 391 U.S. 145, 152-53, 20 L. Ed. 2d 491, 498 (1968).[3] Article III, Section 2, Clause 3 of the United States Constitution states that "[t]he trial of all crimes, except in cases of impeachment, shall be by jury." The Sixth Amendment to the Constitution of the United States further provides that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed." As observed by Sir William Blackstone, the right to jury trial instills public trust in determinations of a defendant's guilt or innocence because "the truth of every accusation . . . [must] be confirmed by the unanimous suffrage of twelve of his equals and neighbours." 4 William Blackstone, Commentaries *349-50, quoted in Duncan, 391 U.S. at 151-52, 20 L. Ed. 2d at 497, and Blakely, ___ U.S. ___, 159 L. Ed. 2d at 412 (alterations in original).
In 2000, however, the United States Supreme Court held that the right to jury trial also requires that jurors find sentencing facts which increase the penalty for a crime "beyond the prescribed statutory maximum." Apprendi v. New Jersey, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455 (2000). Four years later, the Court defined "statutory maximum" as the maximum sentence permitted by the jury's verdict or admitted by the defendant, without additional judge-made findings of fact. Blakely, ___ U.S. at ___, 159 L. Ed. 2d at 413-14.
This Court must now determine whether North Carolina's Structured Sentencing Act is Blakely compliant. After thorough review of United States Supreme Court precedent, including Apprendi v. New Jersey and Blakely v. Washington, and this Court's intervening opinion in State v. Lucas, we conclude that those portions of N.C.G.S. ? 15A-1340.16 which require trial judges to consider evidence of aggravating factors not found by a jury or admitted by the defendant and which permit imposition of an aggravated sentence upon judicial findings of such aggravating factors by a preponderance of the evidence are unconstitutional.
In Apprendi v. New Jersey, the United States Supreme Court granted certiorari to review a New Jersey law which authorized an "extended term" of imprisonment for defendants whose crimes were classified as "hate crimes." 530 U.S. at 468-69, 147 L. Ed. 2d at 442. This "hate crime" enhancement, which did not criminalize conduct in and of itself, was designed to augment the maximum sentence imposed for any separate complete offense. Id. Under the New Jersey statute, a trial judge was permitted to impose a longer sentence than the sentence set forth in the provision defining an underlying offense if the judge found by a preponderance of the evidence that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." Id.
The defendant in Apprendi pleaded guilty to second-degree possession of a firearm for an "unlawful purpose," an offense punishable in New Jersey by five to ten years imprisonment. Id. at 469-70, 147 L. Ed. 2d at 442-43. During sentencing, the State requested, and the trial judge conducted, an evidentiary hearing on the defendant's "purpose" for unlawful possession. Id. at 470, 147 L. Ed. 2d at 443. Following the hearing, the judge found by a preponderance of the evidence that the defendant's actions were "`motivated by racial bias'" and committed "`with a purpose to intimidate.'" Id. at 471, 147 L.Ed. 2d at 443. Thereafter, the judge sentenced the defendant to a twelve-year "extended term" of imprisonment. Id.
On appeal, the defendant argued that the Due Process Clause of the United States Constitution requires that findings of "bias" and "purpose to intimidate"?€"the two factors upon which his "extended term" was based?€"must be proved to a jury beyond a reasonable doubt. Id. The United States Supreme Court agreed, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 147 L. Ed. 2d at 455. The Court concluded: "The New Jersey procedure challenged in this case is an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." Id. at 497, 147 L. Ed. 2d at 459 (emphasis added). Granting relief to the defendant, the United States Supreme Court reversed the judgment of the Supreme Court of New Jersey and remanded the case for further proceedings not inconsistent with its opinion. Id.
The following year, in State v. Lucas, this Court applied Apprendi to the sentencing of a defendant whose first-degree burglary and second-degree kidnapping sentences were enhanced pursuant to N.C.G.S. ? 15A-1340.16A, which required that sixty months be added to a defendant's minimum sentence upon a judicial finding that the defendant "used, displayed, or threatened to use or display a firearm." 353 N.C. at 592-93, 548 S.E.2d at 728. Section 15A-1340.16A applied to defendants convicted of Class A, B1, B2, C, D, or E felonies. Id. Like the New Jersey statute challenged in Apprendi, section 15A-1340.16A lengthened the actual sentence imposed for an underlying offense, but did not criminalize the conduct itself. Id. at 592-93, 548 S.E.2d at 728-29.
In Lucas, a jury convicted the defendant of first-degree burglary, a Class D felony, and second-degree kidnapping, a Class E felony. Id. at 593, 548 S.E.2d at 729. During sentencing, the trial court determined that the defendant had a prior record level of I. Id. Referring to the appropriate statutory punishment chart, the sentencing judge selected minimum sentences at the high end of the presumptive range: sixty-four months minimum imprisonment for first-degree burglary and twenty-five months minimum imprisonment for second-degree kidnapping. Id. Thereafter, the judge added sixty months to each minimum sentence in accordance with section 15A-1340.16A, before determining the corresponding maximum sentences. Id.
Reviewing the defendant's motion for appropriate relief, this Court considered the meaning of "statutory maximum" as employed by Apprendi. Id. at 596, 548 S.E.2d at 730-31. The Court defined "statutory maximum" for Apprendi purposes as the maximum sentence that a trial judge could properly impose by reference to the statutory punishment charts, including an aggravated sentence. Id. at 596, 548 S.E.2d at 731. The Court explained that the maximum sentence authorized by the North Carolina Structured Sentencing Act results from:
(1) findings that the defendant falls into the highest criminal history category for the applicable class offense and that the offense was aggravated, followed by (2) a decision by the sentencing court to impose the highest possible corresponding minimum sentence from the ranges presented in the chart found in N.C.G.S. ? 15A-1340.17(c).
Id. (emphasis added).
This holding appeared consistent with Apprendi, in which, following a historical discussion of common law sentencing jurisprudence, the United States Supreme Court cautioned:
We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion?€"taking into consideration various factors relating both to offense and offender?€"in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence[s] within statutory limits in the individual case.
530 U.S. at 481, 147 L. Ed. 2d at 449.
Under the straightforward approach developed by Lucas, most criminal sentences in North Carolina were considered Apprendi compliant. In a small number of cases, as in Lucas, separate statutory enhancement provisions had the potential to increase a defendant's actual sentence beyond the statutory maximum.
As calculated in Lucas, the maximum enhanced sentence for a Class D felony pursuant to N.C.G.S. ? 15A-1340.16A was 301 months?€"seventy-two months longer than the authorized statutory maximum sentence defined by this Court. 353 N.C. at 597, 548 S.E.2d at 731. Applying Apprendi, this Court held that facts supporting such an enhanced sentence under N.C.G.S. ? 15A-1340.16A must be submitted to a jury and proved beyond a reasonable doubt. Id. at 597-98, 548 S.E.2d at 731. The Court further held that "in every instance where the State seeks an enhanced sentence pursuant to N.C.G.S. ? 15A-1340.16A, it must allege the statutory factors supporting the enhancement in an indictment." Id. For the reasons stated above, this Court found that the State must "meet the requirements set out in . . . Apprendi in order to apply the enhancement provisions of the statute."[4] Id. at 598, 548 S.E.2d at 732. Granting relief, the Court vacated the defendant's enhanced sentences and remanded his case to the trial court for further proceedings consistent with its opinion. Id. at 599, 548 S.E.2d at 732.
In Blakely v. Washington, the United States Supreme Court addressed the meaning of "statutory maximum" with respect to an "exceptional" sentence imposed on a criminal defendant pursuant to Washington State's Sentencing Reform Act. ___ U.S. at ___, ____, 159 L. Ed. 2d at 410, 413. The defendant pleaded guilty to second-degree kidnapping involving domestic violence and use of a firearm, an offense punishable by imprisonment within a "standard range" of forty-nine to fifty-three months under Washington state law. Id. at ___, 159 L. Ed. 2d at 410-11. Washington statutes provided, however, that a judge may impose a sentence above the "standard range" upon finding "substantial and compelling reasons justifying an exceptional sentence." Id. at ___, 159 L. Ed. 2d at 411. "Substantial and compelling reasons" deemed to support an exceptional sentence were listed in Washington's Sentencing Reform Act. Id. at ___, 159 L. Ed. 2d at 411. The trial judge found as an aggravating factor that defendant had acted with "deliberate cruelty" in kidnapping his wife. Id. at ___, 159 L. Ed. 2d at 411. The judge then sentenced the defendant to an exceptional sentence of ninety months?€"thirty-seven months longer than the maximum sentence recommended by prosecutors and authorized by Washington's kidnapping statute. Id. at ___, 159 L. Ed. 2d at 411.
On appeal, the defendant argued that Washington's Sentencing Reform Act, which permits judges to impose "exceptional sentences" based upon judicial findings of aggravating sentencing factors, "deprived him of his federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence." Id. at ___, 159 L. Ed. 2d at 412. The United States Supreme Court agreed, reaffirming the Apprendi rule. Id. at ___, 159 L. Ed. 2d at 412, 415-16. The Court further clarified that the "statutory maximum" referred to by Apprendi is not the maximum sentence authorized by statute, but "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at ___, 159 L. Ed. 2d at 413. The jury's verdict or the defendant's admissions, standing alone, must authorize the sentence imposed. Id. at ___, 159 L. Ed. 2d at 413-14.
Applying this definition to the defendant, the United States Supreme Court concluded that the ninety month "exceptional sentence" imposed under Washington's Sentencing Reform Act exceeded the "statutory maximum" by more than three years. Id. at ___, 159 L. Ed. 2d at 413-14, 420. Accordingly, the Court held that the Sixth Amendment required the facts supporting the defendant's "exceptional sentence," specifically that the defendant acted with "deliberate cruelty," to be proved to a jury beyond a reasonable doubt. Id. at ___, 159 L. Ed. 2d at 420. Granting the defendant relief, the United States Supreme Court reversed the judgment of the Washington Court of Appeals and remanded his case for further proceedings not inconsistent with its opinion. Id.
The United States Supreme Court decision in Blakely and the North Carolina Court of Appeals decision in Allen prompt this Court to revisit its prior holding in Lucas defining "statutory maximum." After Blakely, it is clear that the "statutory maximum" to which Apprendi applies is not the maximum sentence authorized by statute; rather, for Apprendi purposes, "statutory maximum" means the maximum sentence authorized by the jury verdict or the defendant's admissions. Applied to North Carolina's structured sentencing scheme, the rule of Apprendi and Blakely is: Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt. See Blakely, ___ U.S. at ___, 159 L. Ed. 2d at 413-14; Apprendi, 530 U.S. at 490, 147 L. Ed. 2d at 455; N.C.G.S. ?? 15A-1340.13, -15A-1340.14, -15A-1340.16; -15A-1340.17. Accordingly, we overrule that language of State v. Lucas which defines "statutory maximum" in a manner inconsistent with this opinion.
On 8 February 2005, defendant filed a motion for appropriate relief in this Court, arguing that "Blakely and the surviving portion of Lucas" require "aggravating factors that are used to increase a sentence beyond the top of the presumptive range . . . be alleged in an indictment." As indicated in Lucas, 353 N.C. at 597-98, 548 S.E.2d at 731, a requirement that the State "allege the statutory factors supporting the [N.C.G.S. ? 15A-1340.16A] enhancement in an indictment" might be inferred from the United States Supreme Court's statement in Apprendi that
`under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' The Fourteenth Amendment commands the same answer in this case involving a state statute.
530 U.S. at 476, 147 L. Ed. 2d at 446 (quoting Jones v. United States, 526 U.S. 227, 243 n.6, 143 L. Ed. 2d 311, 326 n.6 (1999)).
However, in footnote three of the Apprendi opinion, the Court clarified that "[the defendant] has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. . . . We thus do not address the indictment question separately today." Subsequent United States Supreme Court decisions in Ring v. Arizona and Blakely, which applied Apprendi to aggravating factors supporting capital and noncapital sentences respectively, were based solely on the Sixth Amendment right to jury trial, without reference to the Fifth Amendment's indictment guarantee. Ring v. Arizona, 536 U.S. 584, 597, 609, 153 L. Ed. 2d 556, 569, 576-77 (2002); Blakely, ___ U.S. at ___, 159 L. Ed. 2d at 415-16. Although "[d]ue process and notice requirements under the Sixth Amendment inure[] to state prosecutions," this Court recently recognized "to this date, the United States Supreme Court has not applied the Fifth Amendment indictment requirements to the states." State v. Hunt, 357 N.C. 257, 272-73, 582 S.E.2d 593, 603-04, cert. denied, 539 U.S. 985, 156 L. Ed. 2d 702 (2003). Indeed, in Hunt this Court concluded that "the Fifth Amendment would not require aggravators, even if they were fundamental equivalents of elements of an offense, to be pled in a state-court indictment." Id. at 272, 582 S.E.2d at 603. Accordingly, we also overrule that language of Lucas, requiring sentencing factors which might lead to a sentencing enhancement to be alleged in an indictment.
For the reasons stated above, we determine that those portions of N.C.G.S. ? 15A-1340.16 (a), (b), and (c) which require trial judges to consider evidence of aggravating factors not found by a jury or admitted by the defendant and which permit imposition of an aggravated sentence upon judicial findings of such aggravating factors by a preponderance of the evidence violate the Sixth Amendment to the United States Constitution. Standing alone, N.C.G.S. ? 15A-1340.16(d), which lists statutory aggravating factors, can be given effect as if the unconstitutional provisions had not been enacted. See. e.g., Pope v. Easley, 354 N.C. 544, 548, 556 S.E.2d 265, 268 (2001) ("The test for severability is whether the remaining portion of the legislation can stand on its own and whether the General Assembly would have enacted the remainder absent the offending portion."). For example, under Blakely the judge may still sentence a defendant in the aggravated range based upon the defendant's admission to an aggravating factor enumerated in N.C.G.S. ? 15A-1340.16(d).
We emphasize that Blakely, which is grounded in the Sixth Amendment right to jury trial, affects only those portions of the Structured Sentencing Act which require the sentencing judge to consider the existence of aggravating factors not admitted to by a defendant or found by a jury and which permit the judge to impose an aggravated sentence after finding such aggravating factors by a preponderance of the evidence. Those portions of N.C.G.S. ? 15A-1340.16 which govern a sentencing judge's finding of mitigating factors and which permit the judge to balance aggravating and mitigating factors otherwise found to exist are not implicated by Blakely and remain unaffected by our decision in this case.
COURT OF APPEALS OPINION BELOW
Having identified error in defendant's sentence, this Court must now determine whether that error is subject to harmless error review, and if so, whether harmless error exists in this case. The Court of Appeals concluded that the harmless-error rule does not apply, citing State v. Ahearn, 307 N.C. 584, 300 S.E.2d 689, which held that a defendant's case must be remanded for resentencing whenever the trial judge has imposed an aggravated sentence based upon a sentencing factor which is not supported by the evidence. Allen, ___ N.C. App. at ___, 601 S.E.2d at 306. The State argues, and we agree, that Ahearn is not controlling.
In State v. Ahearn, this Court considered the effect of one aggravating factor, which was later determined to be unsupported by the evidence, on a sentencing judge's balancing of all sentencing factors present in the case. 307 N.C. at 599-602, 300 S.E.2d at 698-701. The defendant in Ahearn was convicted of felonious child abuse and voluntary manslaughter in connection with the death of his girlfriend's two-year old son. Id. at 585-87, 300 S.E.2d at 690-91. During sentencing, the trial judge found three aggravating factors and five mitigating factors. Id. at 592-93, 300 S.E.2d at 694-95. The judge weighed the aggravating and mitigating factors, determined that "`the aggravating factors although few in number are substantially more dominant than the mitigating factors,'" and imposed aggravated sentences of sixteen years for voluntary manslaughter and five years for felonious child abuse. Id. at 585, 592, 300 S.E.2d at 690-91, 694. On appeal, the Court of Appeals and this Court determined that the trial judge's finding of the aggravating factor that the defendant's crime was especially heinous, atrocious or cruel was based upon insufficient evidence. Id. at 599, 300 S.E.2d at 698. Because "[r]eliance on a factor in aggravation determined to be erroneous may or may not have affected the balancing process which resulted in the decision to deviate from the presumptive sentence," this Court remanded the defendant's case for resentencing. Id. at 602, 608, 300 S.E.2d at 700, 704.
This Court's holding in Ahearn rested on the inability of an appellate court to determine how removing one aggravating factor would affect the sentencing judge's balancing of the remaining aggravating and mitigating factors present in the defendant's case. Id. at 602, 300 S.E.2d at 700-01. Ahearn did not address whether the finding of an aggravating factor by the wrong entity is subject to harmless error review. Because Blakely does not concern the actual combination of aggravating and mitigating factors found by a jury, but instead safeguards the participation of jurors in sentencing, Ahearn does not control the case sub judice. Our analysis of this separate question is guided by the reasoning of Blakely v. Washington, the evolution of harmless error review, and United States Supreme Court case law defining structural error.
STRUCTURAL ERROR
The State argues that for purposes of Apprendi and Blakely, sentencing factors are functionally equivalent to the elements of a criminal offense. Citing Neder v. United States, 527 U.S. 1, 144 L. Ed. 2d 35 (1999), the State reasons that failure to submit sentencing factors to a jury should receive the same degree of scrutiny as failure to submit an element of a criminal offense to the jury?€"harmless error review. We disagree, concluding instead that complete removal of aggravating factors from jury consideration during sentencing is structural error similar to the structural error identified by the United States Supreme Court in Sullivan v. Louisiana, 508 U.S. 275, 124 L. Ed. 2d 182 (1993).
Structural error is a rare form of constitutional error resulting from a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310, 113 L. Ed. 2d 302, 337 (1991). Such errors "deprive defendants of `basic protections,' without which . . . `no criminal punishment may be regarded as fundamentally fair.' Neder, 527 U.S. at 8-9, 144 L. Ed. 2d at 46-47 (quoting Rose v. Clark, 478 U.S. 570, 577-78, 92 L. Ed. 2d 460, 470 (1986)). The United States Supreme Court first defined structural error in 1991 and has identified six instances of structural error to date: (1) complete deprivation of right to counsel, Johnson v. United States, 520 U.S. 461, 468, 137 L. Ed. 2d 718, 728 (1997) (citing Gideon v. Wainwright, 372 U.S. 335, 9 L. Ed. 2d 799 (1963)); (2) a biased trial judge, Tumey v. Ohio, 273 U.S. 510, 71 L. Ed. 749 (1927); (3) the unlawful exclusion of grand jurors of the defendant's race, Vasquez v. Hillery, 474 U.S. 254, 88 L. Ed. 2d 598 (1986); (4) denial of the right to self-representation, McKaskle v. Wiggins, 465 U.S. 168, 79 L. Ed. 2d 122 (1984); (5) denial of the right to a public trial, Waller v. Georgia, 467 U.S. 39, 81 L. Ed. 2d 31 (1984); and (6) constitutionally deficient jury instructions on reasonable doubt, Sullivan, 508 U.S. 275, 124 L. Ed. 2d 182. See Johnson, 520 U.S. at 468-69, 137 L. Ed. 2d at 728 (identifying the six cases in which the United States Supreme Court has found structural error).
Structural errors are said to "defy" harmless error review because they are "so intrinsically harmful as to require automatic reversal (i.e., `affect substantial rights') without regard to their effect on the outcome." Neder, 527 U.S. at 7, 144 L. Ed. 2d at 46. For this reason, a defendant's remedy for structural error is not dependant upon harmless error analysis; rather, structural errors are reversible per se. Id.
Most constitutional errors are not structural. Rose, 478 U.S. at 578, 92 L. Ed. 2d at 471. On appeal, a reviewing court applies the harmless-error rule to determine whether these nonstructural errors were prejudicial to the defendant or harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11 (1967). Errors that have prejudiced a defendant will be remedied by the appellate court, id. at 24, 26, 17 L. Ed. 2d at 710-11; N.C.G.S. ? 15A-1442, -1443, -1447 (2003), and a constitutional error is presumed to be prejudicial unless the State can show that the error was harmless beyond a reasonable doubt, meaning that "the error complained of did not contribute to the verdict obtained," Chapman, 386 U.S. at 24, 17 L. Ed. 2d at 710.
Since the United States Supreme Court first introduced harmless error review in 1946, that Court has employed one of two tests to determine whether an error "contribute[d] to the verdict obtained." Id. First, the Court has considered the "impact of the thing done wrong on the minds of [the jury]." Kotteakos v. United States, 328 U.S. 750, 764, 90 L. Ed. 1557, 1566 (1946). The Court applied this test, which evaluates the "effect [the error] had upon the guilty verdict in the case at hand," in Sullivan v. Louisiana. 508 U.S. at 279, 280-82, 124 L. Ed. 2d at 189, 190-91. Second, the United States Supreme Court has applied harmless error review after determining that evidence of the defendant's guilt presented at trial was "overwhelming." Harrington v. California, 395 U.S. 250, 254, 23 L. Ed. 2d 284, 287-88 (1969). The Court applied the "overwhelming" evidence standard in Neder v. United States. 527 U.S. at 16-17, 144 L. Ed. 2d at 51-52.
Sullivan, in which the United States Supreme Court found structural error, and Neder, in which the Court found error to be harmless beyond a reasonable doubt, guide this Court's decision in the case sub judice. Both Sullivan and Neder address the proper appellate court response to constitutional errors made during the guilt-innocence portion of a trial. The United States Supreme Court has not defined which standard, harmless or structural error, should be applied to state sentencing errors pursuant to Blakely; however, the imposition of a constitutional punishment is just as important to a criminal defendant and to society as is a constitutional determination of the defendant's guilt or innocence. In Sullivan v. Louisiana, the United States Supreme Court considered whether harmless error review applied to constitutionally deficient jury instructions on reasonable doubt, which were submitted to the jury in a defendant's first-degree murder trial. 508 U.S. at 276-77, 124 L. Ed. 2d at 187. Except for the testimony of one eyewitness (who identified the defendant on direct examination, but was unable to identify either the defendant or his accomplice during a physical lineup), the State's evidence at trial was circumstantial. Id. at 276, 124 L. Ed. 2d at 187. Although defense counsel contended during closing argument that reasonable doubt existed as to whether the defendant was the shooter, the defendant was convicted of first-degree murder. Id. at 276-77, 124 L. Ed. 2d at 187. On appeal, the State conceded that the trial judge had improperly defined "reasonable doubt" while instructing the jury, but argued that the error was harmless. Id. at 277, 124 L. Ed. 2d at 187.
Applying the "effect on the jury" standard, the United States Supreme Court considered "the basis on which `the jury actually rested its verdict.'" Id. at 279-80, 124 L. Ed. 2d at 189-90. Because the jury had not returned a "verdict of guilty-beyond-a-reasonable-doubt," the Court reasoned that the harmless-error inquiry "whether the same verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless." Id. at 280, 124 L. Ed. 2d at 189-90. The Court explained that there was "no object, so to speak, upon which harmless-error scrutiny can operate." Id. at 280, 124 L. Ed. 2d at 190. Stating that consequences of the defective verdict were "necessarily unquantifiable and indeterminate," the Court declared the error to be "structural" and remanded the defendant's case for further proceedings not inconsistent with its opinion. Id. at 281-82, 124 L. Ed. 2d at 191.
Six years later in Neder v. United States, the United States Supreme Court affirmed the conviction of a defendant who filed a false tax return even though the trial court erred in refusing to submit to the jury the question of whether defendant's false statements were material. 527 U.S. at 6, 25, 144 L. Ed. 2d. at 45, 57. The Court found that harmless error is the proper standard of review when a single element of a criminal offense is omitted from the jury instructions. Id. at 15, 144 L. Ed. 2d. at 51.
In Neder, the United States Supreme Court noted that evidence of the materiality of the defendant's false statements was "overwhelming." Id. at 16-17, 144 L. Ed. 2d. at 52. In fact, the defendant did not even argue at trial that his false statements could be found immaterial. Id. at 16, 144 L. Ed. 2d. at 51-52. Because the question of materiality was not in dispute at trial, the jury considered "all of the evidence and argument in respect to [the defendant's] defense against the tax charges," notwithstanding the trial judge's failure to instruct on that element of the offense. Id. at 9, 144 L. Ed. 2d at 47. Moreover, the defendant's guilt or innocence was "tried before an impartial judge, under the correct standard of proof and with the assistance of counsel." Id. On these facts, the United States Supreme Court reasoned that "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Id. Distinguishing Sullivan, the United States Supreme Court emphasized that omission of one element, materiality, from the jury instructions cannot be said to "vitiate[] all the jury's findings," id. at 11, 144 L. Ed. 2d at 48; thus, the Court concluded that the harmless-error rule applied and remanded the defendant's case for a determination of whether the instructional error was, in fact, harmless. Id. at 25, 144 L. Ed. 2d. at 57.
The United States Supreme Court has made clear that the Sixth Amendment requires aggravating sentencing factors, like elements, to be found by a jury beyond a reasonable doubt. Blakely, ___ U.S. at ___, ___, 159 L. Ed. 2d at 413-14, 420.[5] However, under North Carolina's current structured sentencing scheme, aggravating factors are completely withheld from jury review and are determined by a judge by a preponderance of the evidence. N.C.G.S. ? 15A-1340.16. No impartial jury considers a defendant's evidence, arguments, and defenses during sentencing, id., even when the aggravating factors advanced by the State are highly subjective in nature or disputed by the defendant. Moreover, aggravating factors are found to exist by a low standard of proof: a preponderance of the evidence. Id.; see In re Winship, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375 (1970) ("`There is always in litigation a margin of error, representing error in fact finding,'" which the beyond a reasonable doubt standard is designed to "`reduce.'") (quoting Speiser v. Randall, 357 U.S. 513, 525, 2 L. Ed. 2d 1460, 1472 (1958)). For these reasons, we cannot agree with the State that the logic of Neder applies to defendant's case. Because, as in Sullivan, the jury's findings have been vitiated in total, the harmless-error rule does not apply. We hold that Blakely errors arising under North Carolina's Structured Sentencing Act are structural and, therefore, reversible per se.
This conclusion is supported by the strong language of Blakely itself. Writing for the majority, Justice Scalia explained that Blakely "reflects . . . the need to give intelligible content to the right of jury trial." ___ U.S. at ___, 159 L. Ed. 2d at 415. Justice Scalia emphasized that the Sixth Amendment right to jury trial is
no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary.
Id. at ___, 159 L. Ed. 2d at 415 (emphasis added).[6]
Moreover, the Sixth Amendment expressly secures the participation of an impartial jury in all criminal prosecutions; thus, a trial judge is prohibited from entering a judgment of conviction or directing a guilty verdict against a defendant "regardless of how overwhelmingly the evidence may point in that direction." United States v. Martin Linen Supply Co., 430 U.S. 564, 572-73, 51 L. Ed. 2d. 642, 652 (1977) (emphasis added); see also Rose, 478 U.S. at 578, 92 L. Ed. 2d at 471 ("[H]armless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury."). The error resulting from a directed verdict is that "the wrong entity judged the defendant guilty." Rose, 478 U.S. at 578, 92 L. Ed. 2d at 471; see also State v. Staley, 292 N.C. 160, 169-70, 232 S.E.2d 680, 686 (1977) ("`In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused . . . for ascertainment of guilt by a jury.'") (quoting Bollenbach v. United States, 326 U.S. 607, 615, 90 L. Ed. 350, 356 (1946)). Without trial by jury, the "strong . . . barrier . . . between the liberties of the people and the prerogative of the crown" is compromised. 4 William Blackstone, Commentaries *349.
Through Apprendi and Blakely, the United States Supreme Court has extended the Sixth Amendment right to jury trial to mandatory fact-finding proceedings which result in a criminal sentence above the statutory maximum. When a trial judge, not an impartial jury, finds the existence of all aggravating factors, the resulting sentence shares the same defect as a directed verdict on the defendant's guilt or innocence. "[T]he wrong entity has judged the defendant guilty." Rose, 478 U.S. at 578, 92 L. Ed. 2d at 471.
In United States v. Booker, the United States Supreme Court considered the constitutionality of the Federal Sentencing Guidelines with respect to Apprendi and Blakely. ___ U.S. ___, 160 L. Ed. 2d 621 (2005). The Court determined that "the Sixth Amendment as construed in Blakely does apply to the Sentencing Guidelines," but the Court created a statutory remedy for the violation by invalidating 18 U.S.C. ? 3553(b)(1), a section of the Sentencing Reform Act of 1984 which made "`the [Federal Sentencing Guidelines] . . . mandatory and impose[d] binding requirements on all sentencing judges.'" Id. at ___, 160 L. Ed. 2d at 639, 659. Determining that one additional statutory provision was inseparable from section 3553(b)(1), the Court also severed this provision from the Sentencing Reform Act. Id. at ___, 160 L. Ed. 2d at 659-60. Because federal trial judges were no longer obligated to adhere to Federal Sentencing Guidelines during sentencing, the Court reasoned that Blakely did not apply to the remaining Sentencing Reform Act provisions. Id. at ___, 160 L. Ed. 2d at 643, 659 ("[E]veryone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act] the provisions that make the [Federal Sentencing] Guidelines binding on district judges."). In conclusion, the Court acknowledged,
Ours, of course, is not the last word: The ball now lies in Congress' court. The National Legislature is equipped to devise and install, long-term, the sentencing system, compatible with the Constitution, that Congress judges best for the federal system of justice.
Id. at ___, 160 L. Ed. 2d at 663.
We recognize that dicta in Justice Breyer's "remedial" opinion in Booker suggests that lower federal courts may "apply ordinary prudential doctrines," such as plain and harmless error, when a defendant challenges on direct review a sentence imposed under the Federal Sentencing Guidelines, id. at 665; however, we conclude from context that Justice Breyer's comment refers to appellate review of statutory error, which results when a sentencing judge applies the Federal Sentencing Guidelines as mandatory, rather than advisory as required by the Court's severability holding. Constitutional error arising from a Sixth Amendment violation is not the subject of Justice Breyer's remark. For these reasons, Booker does not control the standard of review applied by North Carolina appellate courts to constitutional Blakely errors arising under North Carolina's Structured Sentencing Act.
Our interpretation is supported by the parallel structure of Booker itself, through which constitutional error and statutory error are identified in two separate majority opinions. Justice Stevens' majority opinion identifies constitutional error, concluding that "the Sixth Amendment as construed in Blakely does apply to the [Federal] Sentencing Guidelines." Id. at ___, 160 L. Ed. 2d at 639. Justice Breyer's separate majority opinion, which contains the dicta in question, identifies statutory error, concluding that "two provisions of the Sentencing Reform Act of 1984 (SRA) that have the effect of making the Guidelines mandatory must be invalidated in order to allow the statute to operate in a manner consistent with congressional intent." Id. at ___, 160 L. Ed. 2d at 639. Justice Breyer's suggestion that "application of the harmless-error doctrine" may determine "whether resentencing is warranted" is expressly limited to "cases not involving a Sixth Amendment violation." Id. at ___, 160 L. Ed. 2d at 665 (emphasis added). Thus, the United States Supreme Court has not yet established a remedy for Sixth Amendment Blakely error in the state courts.
This Court is not the first state supreme court to order resentencing in response to Blakely error.[7] Most recently, in State v. Hughes, the Supreme Court of Washington held that Blakely sentencing errors are structural errors. State v. Hughes, ___ Wash. 2d ___, ___ P.3d ___, 2005 Wash. LEXIS 362 at ** 2-3, 31 (Apr. 14, 2005) (Nos. 74147-6, 75053-0, 75063-7). That Court based its holding on an exhaustive review of the harmless error doctrine, noting that many harmless error proponents misconstrue United States v. Cotton, 535 U.S. 625, 152 L. Ed. 2d 860 (2002), which applied plain, not harmless, error to Apprendi violations. Id. at *35. The Washington Supreme Court further observed that, at present, the federal circuits "appear inconsistent in whether they will apply harmless error analysis to Apprendi/Blakely violations." Id. at *39. Distinguishing Neder, the Court stated,
Although Neder involved the situation where a jury did not find facts supporting every element of the crime, it still returned a guilty verdict. Like traditional harmless error analysis cases, the reviewing court could ask whether but for the omission in the jury instruction, the jury would have returned the same verdict. Where Blakely violations are at issue, however, the jury necessarily did not return a special verdict or explicit findings on the aggravating factors supporting the exceptional sentence. The reviewing court asks whether but for the error, the jury would have made different or new findings. This situation is analogous to Sullivan?€"there is no basis upon which to conduct a harmless error analysis.
Id. at *41. Because "speculat[ion] on what juries would have done if they had been asked to find different facts" is impermissible, the Washington Supreme Court concluded, as do we, that "[h]armless error analysis cannot be conducted on Blakely Sixth Amendment violations." Id.
CONCLUSION
Although this Court might envision several measures which would cure the constitutional defect present in N.C.G.S. ? 15A-1340.16, we are in agreement that the choice of remedy is properly within the province of the General Assembly. "The punishment to be inflicted for any crime is left entirely to the General Assembly." State v. Lytle, 138 N.C. 738, 743, 51 S.E. 66, 68 (1905). And this Court has "`absolutely no authority to control or supervise the power vested by the Constitution in the General Assembly as a coordinate branch of the government.'" State v. Smith, 352 N.C. 531, 553, 532 S.E.2d 773, 787 (2000) (quoting Person v. Bd. of State Tax Comm'rs, 184 N.C. 499, 503, 115 S.E. 336, 339 (1922), quoted in In re Alamance Cty. Court Facils., 329 N.C. 84, 95, 405 S.E.2d 125, 130 (1991)), cert. denied, 532 U.S. 949, 149 L. Ed. 2d 360 (2001).
Having identified the source and nature of the constitutional defect present in N.C.G.S. ? 15A-1340.16, we refrain from unwarranted interference in the legislative revision of North Carolina's structured sentencing scheme. In so doing, we note that the General Assembly has mandated that the North Carolina Sentencing and Policy Advisory Commission "study the North Carolina Structured Sentencing Act in light of the United States Supreme Court's decision in Blakely . . . . and report its findings and recommendations, including any proposed legislation, to the 2005 General Assembly upon its convening." The Studies Act of 2004, ch. 161, sec. 44.1, 2004 N.C. Sess. Laws 162, 195. The Commission submitted its report, including draft legislation, to the General Assembly in January 2005. N.C. Sentencing & Policy Advisory Comm'n, Rep. on Study of Structured Sentencing Act in Light of Blakely v. Washington Pursuant to Sess. Law 2004-161, Sec. 44.1 (2005). On 21 June 2005 the General Assembly ratified An Act to Amend State Law Regarding the Determination of the Aggravating Factors in a Criminal Case to Conform with the United States Supreme Court Decision in Blakely v. Washington. H. 822, 146th Gen. Assem., 2005 Sess. (N.C. 2005) (ratified), available at http://www.ncga.state.nc.us/Sessions/2005/Bills/ House/HTML/H822v3.html. This legislation was submitted to the Governor for his signature on 22 June 2005. Id. For the reasons stated above, we deny defendant's motion for appropriate relief filed in this Court 8 February 2005. We affirm the decision of the Court of Appeals remanding defendant's case for resentencing and hold that, to the extent N.C.G.S. ? 15A-1340.16 (a), (b), and (c) require trial judges to find aggravating factors by a preponderance of the evidence section 15A-1340.16 violates Blakely. We further hold that the harmless-error rule does not apply to sentencing errors which violate a defendant's Sixth Amendment right to jury trial pursuant to Blakely. Such errors are structural and, therefore, reversible per se.
As stated at the outset, these holdings apply to cases "in which the defendants have not been indicted as of the certification date of this opinion and to cases that are now pending on direct review or are not yet final." Lucas, 353 N.C. at 598, 548 S.E.2d at 732. See Hinnant, 351 N.C. 277, 523 S.E.2d 663; Griffith, 479 U.S. 314, 93 L. Ed. 2d 649. Accordingly, we modify and affirm the decision of the Court of Appeals and remand defendant's case to that Court for further remand to Gaston County Superior Court for imposition of a sentence consistent with this opinion.
MODIFIED AND AFFIRMED.

See Figure 1; N.C.G.S. ? 15A-1340.17(c).

See Figure 2; N.C.G.S. ? 15A-1340.17(d), (e), (e1).

The right to jury trial, which has been classified as a "fundamental right" by the United States Supreme Court was also secured by the constitutions of the original thirteen states, including North Carolina, and the constitution of every state subsequently entering the Union. Duncan, 391 U.S. at 153, 157-58, 20 L. Ed. 2d at 498, 501. See N.C. Const. of 1776, A Declaration of Rights, ? 9 (Right of jury trial in criminal cases).

In 2003, the North Carolina General Assembly revised N.C.G.S. ? 15A-1340.16A by An Act to Amend the Law Regarding Enhanced Sentences as Recommended by the Sentencing Commission and to Make Conforming Changes. Ch. 378, sec. 2, 2003 N.C. Sess. Laws 1078, 1078. Applicable to all offenses occurring on or after 1 August 2003, revised section 15A-1340.16A corrects the constitutional defect identified by this Court in Lucas and complies with this Court's holdings in that case. As amended, section 15A-1340.16A requires that facts supporting an enhanced sentence for firearm use be alleged in the indictment and proved to a jury beyond a reasonable doubt. Trial judges are no longer permitted to find facts supporting an enhanced sentence pursuant to section 15A-1340.16A.

As stated above, this condition applies only when the defendant is sentenced beyond the statutory maximum defined by Blakely and does not implicate facts to which a defendant has admitted or the fact of a prior conviction. For purposes of structured sentencing in North Carolina, the statutory maximum is the highest presumptive sentence imposed pursuant to N.C.G.S. ?? 15A-1340.16 and -1340.17.

Interestingly, this language underpinning the United States Supreme Court's holding in Blakely is strikingly similar in tone and content to Justice Scalia's dissent in Neder, in which Justice Scalia describes the right to jury trial as the "spinal column of American democracy." Neder, 527 U.S. at 30, 144 L. Ed. 2d at 60 (Scalia, J., dissenting). In that dissent, Justice Scalia strongly disagreed with the logic and constitutional soundness of applying an "overwhelming evidence" harmless error standard to the defendant's conviction, arguing that no matter how great the evidence against a criminal defendant, he is entitled to the benefit of certain basic constitutional rights including the right to counsel, the right to an impartial judge, and the right "to have the jury determine his guilt of the crime charged." Id. at 30-34, 144 L. Ed. 2d at 60-62. Justice Scalia concluded, "The very premise of structural-error review is that even convictions reflecting the `right' result are reversed for the sake of protecting a basic right." Id. at 34, 144 L. Ed. 2d at 62. Similarly, writing for the majority in Crawford v. Washington, Justice Scalia recently stated that "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." 541 U.S. 36, 62, 158 L. Ed. 2d 177, 199 (2004).

However, until this Court's decision in Allen today, no two state supreme courts have resolved Blakely issues in the same manner. See People v. Black, ___ P.3d ___, ___, 2005 Cal. LEXIS 6566 at *2 (Ca. June 20, 2005) (No. S126182) (concluding that "the judicial fact finding that occurs when a judge exercises discretion to impose an upper term sentence under California law does not implicate a defendant's Sixth Amendment right to a jury trial"); Lopez v. Colorado, ___ P.3d ___, ___, ___, 2005 Colo. LEXIS 504 at **41-42, 55 (Colo. May 23, 2005) (No. 04SC150) (stating "we need not find [Colorado's aggravated sentencing statute] is unconstitutional because aggravated sentences can be based on Blakely-compliant or Blakely-exempt facts," and concluding that the facts in the case sub judice were Blakely compliant); Smylie v. State, 823 N.E.2d 679, 685-86 (Ind. 2005) (severing only those "minimal portions" of Indiana's sentencing system, which mandated a fixed term and permitted judicial discretion in finding aggravating or mitigating circumstances to deviate from the fixed term, from the statute and holding that "the sort of facts envisioned by Blakely as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws"); State v. Dilts, 337 Or. 645, 654-56, 103 P.3d 95, 100-01 (2004) (holding that the Oregon sentencing guidelines are not facially unconstitutional; thus severability is inapplicable, and remanding to the trial court for implementation of the sentencing guidelines consistent with Blakely); State v. Gomez, ___ S.E.3d ___, 2005 Tenn. LEXIS 350 at **1, 49-50, 66 (Tenn. Apr. 15, 2005) (No. M2002-01209-SC-R11-CD) (applying plain error review in determining that Tennessee's statutory sentencing procedures do not violate Blakely, in spite of the State's concession that such violations had occurred, because the Tennessee Criminal Sentencing Reform Act of 1989 is "`an indeterminate,' non-mandatory, advisory sentencing scheme which merely requires judges to consider enhancement factors, along with other information, when exercising their discretion to select an appropriate sentence within the statutory range.")